## RHODE ISLAND ORTHOPEDIC SOCIETY

v.

## BLUE CROSS & BLUE SHIELD OF RHODE ISLAND.

No. 98–467–Appeal.

Supreme Court of Rhode Island.

April 10, 2000.

Joseph A. Kelly, Providence, John Dimeglio, North Providence, Jeffrey F. Chase–Lubitz, William M. Dolan, III, Providence, for Plaintiff.

Norman G. Benoit, for Defendant.

Present WEISBERGER, C.J., and BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Court on March 7, 2000, pursuant to an appeal by the plaintiff, Rhode Island Orthopedic Society, from a declaratory judgment entered in favor of the defendant, Blue Cross & Blue Shield of Rhode Island. For the following reasons, we deny the plaintiff's appeal and affirm the judgment of the Superior Court.

### Facts and Procedural History[1]

In 1994, the Rhode Island Department of Labor (the department) promulgated the "Rhode Island Workers' Compensation Medical Fee Schedule" (the department's fee schedule) pursuant to G.L.1956 § 28–33–7, which requires the establishment of a schedule of rates of reimbursement for common medical and dental services provided to employees receiving workers' compensation.[2] Prior to July 1995, Blue

---

1. The facts of this case were obtained from the parties' "Agreed Statement of Facts" submitted to the Superior Court on November 17, 1997, and the Superior Court's decision of September 9, 1998.

2. General Laws 1956 § 28–33–7 provides in pertinent part:

"**Health service provider reimbursement.**— (a) * * * [T]he director of the department of labor * * * shall establish a schedule of rates of reimbursement for those medical and dental services, excluding non physician hospital charges, which are most often provided to employees receiving workers' compensation. * * * In setting the rate of reimbursement for

Cross & Blue Shield of Rhode Island (defendant or Blue Cross), a nonprofit charitable hospital service corporation in Rhode Island, followed the department's fee schedule to process and determine allowances, reimbursements, and fees paid for the treatment of work-related injuries to participating orthopedic physicians. Since July 1995, Blue Cross has promulgated and used its own fee schedule to determine the amounts paid to participating orthopedic physicians for these services. Both the post-July 1995 fee schedule of Blue Cross and the fees paid by Blue Cross to its participating physicians are lower than the rates of reasonable compensation established and promulgated by the department in its fee schedule.

The Rhode Island Orthopedic Society (plaintiff or Orthopedic Society) is a nonprofit corporation whose membership is composed of orthopedic physicians and surgeons licensed to practice medicine in Rhode Island who are actively engaged in the treatment of work-related injuries. Blue Cross has entered into "Participating Physician Contracts" with members of the Orthopedic Society that provide that a contracting physician is considered a "participating physician" and is precluded from "balance billing," a practice in which the treating physician charges the patient or responsible third party a fee in excess of that set forth in Blue Cross's fee schedule. Additionally, a participating physician who petitions the Workers' Compensation Court for a fee in excess of an amount set by the applicable Blue Cross fee schedule, as provided for in § 28–33–7(a), will be excluded from further participation, and will have his or her contract with Blue Cross terminated.

On July 30, 1997, plaintiff brought this declaratory judgment action against Blue Cross, seeking a determination that the "Participating Physician Contract" is void as against public policy because it contravenes the purpose of the Workers' Compensation Act by limiting payment to a rate less than the statutorily mandated rate. After a hearing on an agreed statement of facts and oral argument by both sides,[3] a justice of the Superior Court issued a written decision in favor of Blue Cross, reasoning that the fees set pursuant to § 28–33–7 are maximum rates of reimbursement, and that parties (in this case, Blue Cross and the orthopedic physicians) are free to negotiate for the payment of fees that are less than that schedule. Judgment entered on September 23, 1998, and plaintiff filed a timely appeal.

## Standard of Review

This Court has consistently held that "[t]he decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary." *Sullivan v. Chafee*, 703 A.2d 748, 751 (R.I.1997) (citing *Woonsocket Teachers' Guild Local Union 951, AFT v. Woonsocket School Committee*, 694 A.2d 727, 729 (R.I.1997); *Lombardi v. Goodyear Loan Co.*, 549 A.2d 1025, 1027 (R.I.1988)). When a trial court exercises this discretion, "its decision should remain untouched on appeal unless the court improperly exercised its discretion or otherwise abused its authority." *Id.* (citing *Woonsocket Teachers'*, 694 A.2d at 729). Therefore, this Court reviews a declaratory judgment of the Superior Court "with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceed-

any service or procedure, the director shall determine, based upon available data, the ninetieth (90th) percentile of the usual and customary fee charged by health care providers in the state of Rhode Island and the immediate surrounding area, and in no case shall the rate of reimbursement exceed that amount."

3. At the original proceeding, an amicus curiae brief was submitted by the Rhode Island Medical Society (RIMS), a Rhode Island nonprofit corporation whose membership consists of physicians who are licensed to practice medicine in Rhode Island. The RIMS did not enter into the proceedings before this Court.

ed its authority." *Sullivan,* 703 A.2d at 751.

### Discussion

Here, the Orthopedic Society argued that the trial justice erred by failing to find that the rates set by the department's fee schedule are required to be paid to physicians treating work-related injuries. Specifically, plaintiff argued that the language of § 28–33–7 requires Blue Cross to pay physicians for services performed pursuant to the statute at the rates set by the department and is precluded from paying a lesser amount. On the other hand, Blue Cross argued that the fee schedule created by the department pursuant to § 28–33–7 is merely a ceiling that establishes the maximum allowable rate, and that Blue Cross may contract with physicians to pay them fees that are lower than those promulgated by the department.

■ When considering questions of statutory construction, "this Court examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature." *In re Advisory to the Governor (Judicial Nominating Commission),* 668 A.2d 1246, 1248 (R.I.1996) (citing *Matter of Falstaff Brewing Corp.,* 637 A.2d 1047, 1049–50 (R.I.1994); *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987)). Section 28–33–7 requires that,

> "the director shall determine, based upon available data, the ninetieth (90th) percentile of the usual and customary fee charged by health care providers in the state of Rhode Island and the immediate surrounding area, *and in no case shall the rate of reimbursement exceed that amount.*" (Emphasis added.)

In his decision, the trial justice found that "[a] natural reading of the statute evidences the intent of the legislature; an intent to set a cap on services." He further concluded that "[i]t appears that the statute establishes a reimbursement

scheme whereby both a *maximum* reimbursement to providers and *maximum* liability of employers/insurers is provided," (emphasis in original) and that "[b]oth the rate of reimbursement to providers and the liability of employers and insurers are 'limited' to a maximum figure." Therefore, the trial justice reasoned that,

> "[s]uch a method of fee-setting naturally implies that increments of reimbursement below this limit are feasible. Had the legislature intended a mandatory schedule, it would have chosen a *definitive* phrase such as 'the rate shall be' without the *modifying* language of 'exceed' and 'limited' which is in fact present. The modifying language chosen evidences the legislative intent that the fee schedule serve as a ceiling." (Emphasis in original.)

■ We agree with this sound reasoning of the trial justice, and conclude that the language of § 28–33–7 must be read as requiring that the department's fee schedule serves as a ceiling to reimbursement. Thus the parties, in an arms-length transaction, may negotiate for rates of reimbursement *below* the rates set by the department. Essentially, the department's fee schedule acts as a safety valve in that it limits the reimbursement to physicians who provide common medical and dental services to employees receiving workers' compensation benefits. The existence of a contract between a physician and an organization like Blue Cross that provides a *lower* rate of reimbursement does not implicate the department's fee schedule or the public policy considerations upon which the statute rests. As the trial justice observed, "[i]n the event fee terms between parties are not provided for, the statutory fee schedule is to serve as the default mechanism by which to determine those fees." We agree with this well-reasoned decision, and are satisfied that the trial justice did not abuse his discretion, nor did he misapply the law. Finally, we note that

if a participating physician is truly displeased with the negotiated terms as they stand, the physician may withdraw from the contract and sever his or her relationship with Blue Cross upon ninety days' notice.

For the foregoing reasons, we deny the plaintiff's appeal and affirm the judgment of the Superior Court. The papers of the case may be remanded to the Superior Court.

Justice LEDERBERG did not participate.