DECISION
The Plaintiffs, Rhode Island Coalition Against Domestic Violence, American Civil Liberties Union, Ann Marie Mumm and Daniel Weisman (collectively Plaintiffs) seek declaratory relief requesting the Court to declare the final promulgation of paragraph two of Executive Order 08-01, now amended and included in the amended Rhode Island State Procurement Regulations, to be invalid. The Plaintiffs further seek a permanent injunction barring the enforcement of said order and final regulation. Jurisdiction is pursuant to G.L. 1956 § 9-30-1 of the Uniform Declaratory Judgment Act ("UDJA") and G.L. 1956 § 8-2-13.
 I Facts and Travel
Governor Carcieri's Executive Order relates to the E-Verify program, an internet based system established by the U.S. Department of Homeland Security ("DHS") in partnership with *Page 2 
the Social Security Administration ("SSA"). The Executive Order as it was written originally provided:
 The Department of Administration shall require that all persons and businesses, including grantees, contractors and their subcontractors and vendors doing business with the State of Rhode Island also register and utilize the services of the E-Verify program to ensure compliance with federal and state law. Exec. Order No. 08-01.
The E-Verify program provides a database whereby employers may verify employee eligibility status to work legally within the United States. On or about July 29, 2008, the Department of Administration ("DOA") began mailing notices to all businesses and individuals contracting with the state (hereinafter collectively referred to as "vendors") requiring said vendors within forty-five (45) days to certify to the state that they are registered for the E-Verify program and use it to confirm that those they hire are authorized to work in the United States.
The Plaintiffs filed a motion for a temporary restraining order to restrain the DOA from implementing the Executive Order. On September 15, 2008, this Court denied the temporary restraining order. However, this Court also found that it was more likely than not that the DOA had violated the requirements of the Administrative Procedures Act ("APA") when it failed to provide the requisite notice, hearing and comment period. Consequently, this Court instructed the DOA not to suspend or terminate any current contracts with the state until a final rule had been promulgated in compliance with the APA procedural requirements.
On October 17, 2008, the DOA, in compliance with the court order, gave notice to begin the comment and hearing period for a final regulation. At the same time, it created an interim regulation pursuant to G.L. 1956 § 42-35-3(b), titled "Emergency Regulation Re: Requirement to Register with and Utilize Federal E-Verify Program." *Page 3 
In response to the emergency regulation requiring vendors to utilize the E-Verify system, the Plaintiffs filed a motion to find Defendants in contempt and for a temporary restraining order. On November 12, 2008, this Court ruled that the Defendants were not in contempt and requested further briefing by the parties on the issue of the temporary restraining order. On or about December 2, 2008, this Court denied the request for a temporary restraining order.
The DOA held two public hearings open for public comment addressing the proposed final promulgation. These hearings were held on December 3, 2008 and January 8, 2009. The DOA received written comments, and approximately thirty people in total attended both meetings.
The parties have submitted briefs and a joint statement of undisputed facts. They have also agreed that certain exhibits and affidavits submitted by the parties are to be considered evidence in the case.[1]
The Court will not look outside this body of evidence, as no evidentiary hearing took place or was requested by either party. That notwithstanding, both parties have advanced certain arguments based on information outside the record. For example, the Plaintiffs in their brief make numerous references to studies, data, and reports that question the reliability of the E-Verify system. As previously noted, the Court has disregarded all such assertions since they are not in evidence.
According to the stipulated facts, the parties agree that E-Verify is an internet based system that has been established by the DHS in partnership with the SSA. The program is an online database used to determine whether new hires are eligible to work in the United States. The system uses and checks the employer's 1-9 form in conjunction with information contained in the *Page 4 
database of the SSA and DHS. In the event that the system provides for a tentative non-confirmation, the employee may contact SSA or DHS, following instructions provided to him or her from the employer, to clear up his records. If the employee can properly clear his or her records, then the information is updated in the database. If the employee fails to clear his or her records, E-Verify issues a final non-confirmation to the employer, who is then required to terminate the employee.
Plaintiff Rhode Island Coalition Against Domestic Violence ("RICADV") is a statewide non-profit organization dedicated to ending domestic violence and has two contracts with the State of Rhode Island. Furthermore, the RICADV subcontracts with shelters to provide services directly to victims of domestic violence through the grants it receives from the state. Plaintiff Daniel Weisman[2] is a professor at Rhode Island College. He provides consultant services to the Rhode Island Department of Health pursuant to a subcontract agreement with Capitol City Community Center. Weisman has no employees. Plaintiff Ann Marie Mumm, another professor at Rhode Island College, provided consultant services to the Rhode Island Department of Education through a contract with the department. The contract expired June 30, 2008. Mumm has no current contracts with the state and has no employees. Plaintiff American Civil Liberties Union ("ACLU") has no contracts with the state.
From October 17, 2008 to January 29, 2009, the DO A held two public hearings and accepted public comment relative to the proposed permanent E-Verify regulation. The emergency regulation became effective on October 17, 2008. The permanent regulation was adopted on January 29, 2009 and became on February 18, 2009. *Page 5 
None of the Plaintiffs have had existing contracts terminated due to failure to register and use E-Verify. Furthermore, no vendors have faced sanctions as a result of any failure to follow the E-Verify requirements. Pursuant to the "Rules Regulations and General Conditions of Purchases," vendors must register with E-Verify if they have one or more employees. Conversely, vendors who have no employees, including but not limited to Plaintiffs Daniel Weisman and Ann Marie Mumm, do not have to register with the E-Verify program.
 II Standard of Review
The UDJA empowers this Court with the "power to declare rights, status and other legal relations." Bradford Associates v. Rhode IslandDivision of Purchases, 772 A.2d 485, 489 (R.I. 2001) (quoting G.L. § 9-30-1). Declarations by the Superior Court "shall have the force and effect of a final judgment or decree." Id A party may seek such relief if that party's "rights, status or other legal relations are affected by a statute, municipal ordinance, [or] contract . . . may have determined any question of construction or validity arising under the instrument, statute, ordinance, [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Section 9-30-2. "When acting under the authority of the UDJA, the Superior Court acts not in it appellate capacity; it acts on its original jurisdiction."Tucker Estates Charlestwon, LLC v. The Town of Charlestown et al..964 A.2d 1138 (R.I. 2008) (citing Bradford. 772 A.2d 489). Furthermore, the decision whether to grant declaratory relief is one that lies within the sound discretion of the trial justice. Section 9-30-6; Sullivan v.Chafee, 703 A.2d 748, 751 (R.I. 1997). The trial justice has broad discretion under the UDJA to grant or deny declaratory relief.Tucker. 964 A.2d 1140 (citing Rhode Island Orthopedic Society v. BlueCross Blue Shield of Rhode Island, 748 A.2d 1287, 1289 (R.I. 2000)). *Page 6 
The Rhode Island Supreme Court has made clear that in order for an injunction to issue, the moving party must demonstrate that there is some immediate irreparable injury for which there is no remedy at law.In Re State Employees Union, 587 A.2d 919, 926 (R.I. 1991); Brown v.Amaral, 460 A.2d 7, 10 (R.I. 1983); R.I. Turnpike Bridge Auth. v.Cohen, 433 A.2d 179, 182 (R.I. 1981). "Injuries that are prospective only and that might never occur cannot form the basis of a permanent injunction." Cohen, 433 A.2d at 182. The party seeking the injunctive relief must also show that the balance of equities tips in its favor and that the injunctive relief is in the public interest. Id; StateEmployees Union, 587 A.2d at 926.
 III Analysis A The Governor's Scope of Authority and the Separation ofPowers
At the outset, it must be noted that the General Assembly has placed matters of public procurement within the executive branch of state government. Section 37-2-1 et seq. The Chief Purchasing Officer is charged with the responsibility of implementing the provisions of the Procurement Act. Section 37-2-9. The Chief Purchasing Officer is the Director of Administration and is a member of the Governor's cabinet, appointed by the Governor. Sections 37-2-7(3) and 42-11-1. As a member of the Governor's cabinet, the Director is directly accountable to the Governor, not the General Assembly. Section 42-11-1. Therefore, the Governor, through the Chief Purchasing Officer, has full authority to design a procurement system that fulfills the purposes embodied in the Procurement Act. In that regard, the Chief Purchasing Officer has broad authority to adopt regulations that will effectuate the purposes of the Procurement Act. Section 37-2-9. He also is specifically empowered to "consider and *Page 7 
decide matters of public policy with regard to state procurement." Section 37-2-13. Furthermore, the Procurement Act provides that two of the many purposes of said Act are to "[p]rovide for increased public confidence in procedures followed in public procurement . . . [and to] [p]rovide safeguards of the maintenance of a procurement system of quality, integrity and highest ethical standards." Sections 37-2-2(4) and (7). Moreover, it is provided that the Act "shall be liberally construed and applied to promote its underlying purposes and policies." Section 37-2-2(a).
Having found that public procurement is an executive function and recognizing the broad authority that the Chief Purchasing Officer has in implementing said act, including but not limited to matters of policy, and the liberal construction that is to be afforded to him in fulfilling the purposes of said Act, including but not limited to design of a system of integrity that enhances public confidence, it is clear to this Court that the Chief Purchasing Officer has full authority to impose an E-Verify requirement as part of public procurement. In that the Executive Order directs the Chief Purchasing Officer, who is subordinate to the Governor, to do what that officer has authority to do by statute, neither the Executive Order nor the permanent regulation violates any applicable statutory provision. In that regard, it should also be noted that there is no language in the Procurement Act, or elsewhere in the General Laws of Rhode Island, that impedes the Chief Purchasing Officer, at the Governor's directive, from designing a procurement system that requires vendors doing business with the state to verify that those they employ are legally able to work in the state. In fact, by imposing such a requirement, these executive officers are exercising their discretion to impose a requirement that they have concluded is appropriate in designing a system of integrity that will promote public confidence.
The Court is also mindful that the Rhode Island Constitution was amended in 2004 to create three co-equal branches of government. The new amendments state that "the powers of *Page 8 
the government shall be distributed into three separate distinct departments: the legislative, executive and judicial." Article 5 of the Rhode Island Constitution. Furthermore, "[t]he chief executive power of this state shall be vested in a governor. . . ." Article 9 Section 1 of the Rhode Island Constitution. The executive branch is thus one of three co-equal branches of government with the Governor as the head of this branch. Accordingly, based on the statutory analysis of the Procurement Act as previously undertaken, the Executive Order and the final regulation are a proper exercise of executive authority and do not violate any constitutional authority of the General Assembly.[3]
Simply stated, the Governor has not usurped, as Plaintiffs contend, any legislative prerogative of the General Assembly in that matters of public procurement have been clearly placed within the executive branch by legislative enactment of the General Assembly. See sections 37-2-1 etseq.; section 42-11-1.
The Court also concludes that Plaintiffs' reliance onNarragansett Indian Tribe v. State, 667 A.2d 280 (R.I. 1995) andChang v. Univ. of R.I., 375 A.2d 925 (R.I. 1977) for both the argument that the Governor acted beyond his scope of authority and the argument that the Governor violated the Separation of Powers Doctrine is misplaced. Neither of these cases pertains to the issue at hand.Chang dealt with an executive order that mandated nondiscrimination relating to state employees in contravention of a legislated exemption.Narragansett dealt with the Governor's agreement with the Narragansett tribe to bind the state to allow gaming on the tribal lands when constitutional authority regarding the matter was reserved to the General Assembly. Neither circumstance exists in the case before this Court. *Page 9 
Furthermore, it should be noted that neither case relates to what this Court has found to be a proper exercise of executive authority after the 2004 Separation of Powers Amendment to the Rhode Island Constitution.
In summary, the Court finds that the Governor has not acted beyond his scope of power when he issued the Executive Order. The Court also finds that the Executive Order and the final regulation promulgated thereunder do not violate the Separation of Powers Doctrine of the Rhode Island Constitution.
 B. Emergency Regulation and Effect on Final Rule
The Plaintiffs contend that the emergency regulation should be found invalid. The Plaintiffs further argue that because the emergency regulation is invalid, it has tainted the final rule which should therefore be declared invalid as well.
This Court will not address arguments as to the validity of the emergency regulation because it expired when the final rule took effect on February 18, 2009. Equally noteworthy, no adverse action was taken by DOA against any of the Plaintiffs or any vendor during the operative period of emergency regulation. And finally, the Court has not been persuaded that the predicate for the emergency regulation was erroneous.[4]
The remaining issue is whether the final regulation has been tainted by the emergency regulation. The APA requires a reasonable opportunity for those who are interested to submit data, views, and arguments at oral hearings. G.L. 1956 § 42-35-3(a)(2). During the period that the emergency regulation was in effect, the DOA held two public hearings where those in attendance could openly "comment" about the regulation. The Defendants provide exhibits that *Page 10 
show approximately thirty people were in attendance at the two meetings, and pages of written material were submitted in response during this period. These exhibits demonstrate that there was a reasonable opportunity for those present and those who submitted written comments to be heard.
In their brief, the Plaintiffs relied on numerous cases in the federal system, including Levesque v. Block, 723 F.2d 175 (1st
Cir. 1983), for the proposition that an invalid interim regulation can taint the validity of a final regulation. This Court is not bound by any of those decisions but notes that Levesque supports the decision of this Court. Although the Plaintiffs relied on Levesque and other case law for the proposition that a comment period created after a rule has been implemented can invalidate the final rule, that conclusion is not inevitably reached. In Levesque, the court looked at the fact that even though there was an interim rule invalidly implemented, that did not taint the hearing and comment period that existed during the time of the interim rule, but before the final rule took effect. Id at 188-189. That court took into consideration the fact that the final rules were modified due to the comment period and the amount of public comments that were received. Here, there were a number of public comments received, both written and oral, and the final rule was altered in response to these comments and hearings.
The Court does not find persuasive the arguments made by Plaintiffs. The Court finds that the permanent regulation which incorporates the E-Verify requirement was not tainted by the emergency regulation. *Page 11 
 C. Contract Clause of the Rhode Island Constitution
The Plaintiffs contend that this Executive Order, the emergency regulation, and/or the permanent regulation violate the Contract Clause of the Rhode Island Constitution. Specifically, they allege that the imposition of an E-Verify requirement will illegally impair contracts between vendors and the state.
This Court uses a two-part test to determine whether a violation of the Contract Clause has occurred. First, it must be determined "whether the change in state law has `operated as a substantial impairment of a contractual relationship.'" General Motors Corp. v. Romein,503 U.S. 181, 186 (citing Allied Structural Steel Co. v. Spannaus. 438 U.S. 234,244). That inquiry is divided into three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Id. When examining the substantial impairment, courts often look to the economic harm resulting from the impairment of contract. SeeAllied, 438 U.S. at 247.
Turning first to the Executive Order and the emergency regulation, it is undisputed that the DOA took no punitive actions against any vendor, including the vendor Plaintiffs, during either the operative period of the Executive Order prior to the adoption of the emergency regulation or during the operative period of the emergency regulation. In fact, that status quo was further maintained by the Court's interlocutory decision entered on September 15, 2008 whereby DOA was ordered ". . . not to undertake to terminate any existing contract from the date of this Decision to the date of a duly promulgated rule on the basis of any vendor's failure to certify." DOA has adhered to that order. Accordingly, as to any vendor who contracted with the *Page 12 
state either before or after the operative period of the emergency regulation, there is no evidence that leads this Court to conclude that any contract rights were substantially impaired as a result of the Executive Order and/or the emergency regulation.
Turning next to the Executive Order and the final regulation, the Court notes that only one of the Plaintiffs, RICADV, at the time of the promulgation of the permanent regulation, had a contract with the state or would otherwise be subject to it.[5] As for RICADV or other vendors who may have continuing contracts with the state after the adoption of the final regulation, it should be noted that DOA has affirmed that the E-Verify regulation is prospective in nature only and it will not impact upon contracts that predate the final regulation and remain in effect thereafter.[6] The Court accepts that as a limitation on the applicability of the regulation although specific language to that effect is not contained in the final regulation.[7] Thus, this Court is not satisfied that any preexisting contract has been impaired in any way by the Executive Order and the permanent regulation. In fact, to the contrary, the Plaintiffs have agreed that no vendors who have contracts preexisting the promulgation of the permanent regulation have been harmed or penalized for failing to follow the E-Verify requirements. (Joint Statement of Facts 17.)
On the limited evidence presented, this Court finds that the Contract Clause has not been violated. *Page 13 
 III Conclusion
The Governor has the authority to issue the Executive Order. The Chief Purchasing Officer has the authority to promulgate the E-Verify regulation. There is no persuasive record evidence that the emergency regulation tainted the final regulation. Finally, the Plaintiffs have not met their burden of proof that any contract has been substantially impaired as a result of the Executive Order and/or the final E-Verify regulation.
This Court denies the Plaintiffs' prayer for declaratory relief and a permanent injunction. Counsel are instructed to prepare a form of judgment for entry by the Court.
[1] The evidence consists of the Joint Statement of Facts dated March 5, 2009 and by agreement of Counsel for the parties all affidavits and exhibits appended to Defendants' brief dated March 23, 2009, all affidavits previously submitted by Plaintiffs (i.e. affidavit of Daniel Weisman and affidavit of Deborah DeBarre) and the letter from interim purchasing agent to vendors notifying them of the Executive Order dated July 29, 2008.
[2] The Joint Statement of Facts states that Weisman, Mumm, and the ACLU are Defendants; however, the Court recognizes this error and affords them their status as Plaintiffs in this litigation.
[3] In the Plaintiffs' response to Defendants' memorandum dated March 27, 2009, it is stated that some vendors, such as RICADV, do not have contracts with the executive branch, but instead with the judicial branch or the General Assembly. It is then argued that the Governor does not have the authority to alter those contracts. That argument is advanced without any evidentiary underpinnings as to the manner in which the judicial and legislative Branches utilized DO A pursuant to the Procurement Act for engaging outside vendors. It is further noted that the contracts themselves are not in evidence. Furthermore, the Judiciary and the General Assembly are not parties to this litigation; and therefore have had no opportunity to respond to Plaintiffs assertion. On the basis of these deficiencies in the record, this Court finds no merit to these arguments.
[4] In this Court's December 2, 2008 interlocutory decision, the Court found "that circumstances are sufficiently emergent in this matter to support the adoption of an emergency regulation."
[5] The Court notes that, according to the Joint Statement of Facts, Ann Marie Mumrn and the ACLU have no contracts with the State. Furthermore, throughout this action, Mumm and Weismen did not have any employees; thus they would not have been subject to the E-Verify requirements.
[6] See Affidavit of Louis DeQuattro, Purchasing Agent, dated November 7, 2008.
[7] This Court, however, would also note that even if the regulation were not prospective, contrary to Defendants' assertion, the Plaintiffs have offered no persuasive proof as to how any of them or any vendor would suffer any significant economic harm that could give rise to a finding of substantial impairment