**Supreme Court**

No. 2011-81-M.P.
(PC 10-5700)

State of Rhode Island Department of      :
    Environmental Management

v.                      :

Administrative Adjudication Division.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State of Rhode Island Department of     :
     Environmental Management

v.            :

Administrative Adjudication Division.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  The discovery of a catch of flounder that exceeded the allowable limit by thirty-seven pounds has led to a dispute that eventually has wended its way to this Court.  On May 22, 2007, the F/V Cracker Jac, owned by Daniel R. Barlow, was tied to the dock at the fishing pier at Point Judith in Narragansett.  Two enforcement officers of the Rhode Island Department of Environmental Management (DEM) boarded the boat at a time when Barlow was not on board and said they discovered that the amount of summer flounder he had caught that day was more than was permitted under the applicable regulations.  A notice of violation followed, and a trail of litigation ensued that now terminates in this Court.

Barlow seeks review by way of certiorari of a judgment of the Superior Court that reversed a hearing officer's decision and reinstated DEM's decision, which found Barlow ineligible to participate in its 2010 Summer Flounder Sector Allocation Pilot Program (pilot program).  That agency determined that Barlow was ineligible to participate in the pilot program because of a previous consent agreement he had entered into with the department.  The

agreement reflected a settlement of the above-mentioned allegation that Barlow had violated a state marine fisheries regulation for catch limits. The DEM contended that the consent agreement was an administrative penalty that justified disqualifying Barlow from participating in the pilot program. On appeal from the Administrative Adjudication Division of DEM (AAD), a justice of the Superior Court agreed. Barlow then petitioned this Court for a writ of certiorari, which we granted on June 8, 2011.

This case came before the Supreme Court for oral argument on September 27, 2012, based on an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument. For the reasons set forth in this opinion, we quash the judgment of the Superior Court.

## I

### Facts and Travel

The facts underlying this controversy are not subject to significant dispute. On May 22, 2007, DEM law enforcement officers alleged that Barlow violated Rhode Island Marine Fisheries Regulation § 7.7.2-2 by landing 137 pounds of summer flounder, which exceeded the 100-pound limit.[1] DEM sent Barlow a notice of violation, informing him thereby that any and all of his commercial fishing licenses would be suspended for a period of thirty days because of the violation. Barlow appealed that order of suspension and requested a hearing before the AAD. In mid-December of 2008, without engaging in any adjudicative process, Barlow and DEM settled the matter, and they entered into a consent agreement, concurring that Barlow's

---

[1] The thirty-seven pound overage that Barlow allegedly landed amounted to five to eight fish.

commercial fishing licenses would be suspended for a period of ten days, that he would be absolved of any liability arising from the alleged violation, and that if Barlow violated a fishing regulation in the future, DEM would impose a "first tier" penalty upon him, as if it were his first violation. Additionally, the parties agreed that the consent agreement "shall have the full force and effect of a final administrative adjudication, shall be deemed a final administrative decision * * * and shall be fully enforceable in the Superior Court."[2]

In 2010, Barlow applied to participate in DEM's Summer Flounder Sector Allocation Pilot Program, that would have allowed a daily catch of between 500 and 1,500 pounds of summer flounder. That program would be lucrative for the fishermen, and Barlow expected to earn between $30,000 and $40,000 by engaging in it. However, in a letter dated June 15, 2010, DEM's Division of Fish and Wildlife informed Barlow that he was ineligible to take part in the pilot program because he had been assessed an administrative penalty for violating a state marine fisheries regulation within the previous three years, referring to the 2008 consent agreement. Barlow appealed the denial of his application to the AAD; a hearing was held on September 8, 2010. The AAD reversed the decision of DEM's Division of Fish and Wildlife, finding that the consent agreement was not an administrative penalty because it absolved Barlow of all liability arising from the alleged violation of May 22, 2007. The AAD directed DEM's Division of Fish and Wildlife to allow Barlow to participate in the pilot program. The DEM then appealed the decision of the AAD to the Superior Court under the Administrative Procedures Act, G.L. 1956 chapter 35 of title 42, and the court granted a stay of the AAD's decision. A hearing was held on February 18, 2011.

---

[2] The consent agreement is attached to this opinion.

The trial justice sustained the appeal of the agency. In his decision, the trial justice held that the AAD had erred when it concluded that the consent agreement was not an administrative penalty. In doing so, he reasoned that the consent agreement had the same legal effect as an order issued based on an administrative adjudication. He based that finding on language in the consent agreement that stated that it "shall have the full force and effect of a final administrative adjudication, shall be deemed a final administrative decision * * * and shall be fully enforceable in the Superior Court * * *." The trial justice also held that the denial of Barlow's application to participate in the pilot program was not an ex post facto law, nor did it result in an excessive penalty. Accordingly, he reinstated DEM's decision denying Barlow's application. Barlow then sought review in this Court.

## II

### Standard of Review

"This Court, in reviewing cases brought under the Administrative Procedures Act, G.L. 1956 chapter 35 of title 42, is limited to reviewing questions of law." Foster-Glocester Regional School Committee v. Board of Review, Department of Labor and Training, 854 A.2d 1008, 1012 (R.I. 2004). "On certiorari, this Court will not weigh the evidence," instead "we limit the scope of our review to the record as a whole to determine whether any legally competent evidence exists therein to support the trial court's decision or whether the trial court committed error of law in reaching its decision." Id. (quoting Rhode Island Temps, Inc. v. Department of Labor and Training, Board of Review, 749 A.2d 1121, 1124 (R.I. 2000)). "This Court does not substitute its judgment for that of the agency concerning the credibility of witnesses or the weight of the evidence concerning questions of fact." Id. (quoting Tierney v. Department of Human Services, 793 A.2d 210, 213 (R.I. 2002)).

However, "[t]his Court reviews questions of law, including those premised on contract interpretation, de novo." Rodrigues v. DePasquale Building and Realty Co., 926 A.2d 616, 623 (R.I. 2007) (citing 1800 Smith Street Associates, L.P. v. Gencarelli, 888 A.2d 46, 52 (R.I. 2005)).  Additionally, "[i]f a contract is clear and unambiguous, the meaning of its terms presents a question of law for the court." Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996) (citing Hodor v. United Services Automobile Association, 637 A.2d 357, 359 (R.I. 1994)).

### III

### Discussion

### A

### Mootness

There is a threshold issue in this case about whether the matter is justiciable under the mootness doctrine.  This is so because the program in which Barlow was denied participation ended on December 31, 2010.  This Court has held that "[a] case is moot if it raised a justiciable controversy at the time the complaint was filed, but events occurring after the filing have deprived the litigant of an ongoing stake in the controversy." City of Cranston v. Rhode Island Laborers' District Council Local 1033, 960 A.2d 529, 533 (R.I. 2008) (quoting Seibert v. Clark, 619 A.2d 1108, 1110 (R.I. 1993)).  Barlow concedes that the matter before us is in fact moot because the pilot program in which he was denied participation no longer exists.  However, he argues that this case fits squarely within the so-called "extreme public importance" exception to the mootness doctrine, which we have recognized in the past. See id.

The exception has a two-pronged test.  First, a petitioner must demonstrate that the case is of "extreme public importance." Rhode Island Laborers' District Council Local 1033, 960 A.2d at 533.  Circumstances that satisfy this first prong "will usually implicate 'important

- 5 -

constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights.'" Id. at 533-34 (quoting Cicilline v. Almond, 809 A.2d 1101, 1106 (R.I. 2002)). Second, the petitioner must demonstrate that "the controversy is capable of repetition and will evade review." Unistrut Corp. v. State Department of Labor and Training, 922 A.2d 93, 99 (R.I. 2007) (citing Krivitsky v. Town of Westerly, 823 A.2d 1144, 1146-47 (R.I. 2003)).

Without question, this matter concerns the livelihood of Barlow, as well as other fishermen who may be denied participation in similar fishing programs or may be denied fishing licenses altogether because of alleged past transgressions that were resolved by consent agreements. It is not seriously disputed that Barlow's exclusion from the pilot program by DEM denied him the opportunity to earn a substantial amount of money. In our opinion, the facts of this case are sufficient to satisfy the first prong of the mootness exception.

Turning to the second, it is our further opinion that this controversy is capable of repetition, because DEM could reinitiate the pilot program or begin a similar program at any point in time. As is implicit in its name, this was a "pilot" program, indicating that there is a likelihood that others will follow. There is certainly the potential that DEM could exclude from these programs anyone who has ever been assessed an administrative penalty. As a result, Barlow and other similarly situated fishermen might never be allowed to participate in such programs. Accordingly, it is clear to us that the present controversy is "capable of repetition."

Finally, these cases almost certainly will evade review because of the short duration of the programs involved. The 2010 pilot program ran for only eight months. It would be highly unlikely that an applicant could fully litigate any matter concerning such a program before it expired, as was the case with Barlow. In consideration of the foregoing, we shall address the

- 6 -

merits of the matter because it is of extreme public importance and capable of repetition yet evading review.

**B**

**Denial of Barlow's Application to Participate in the Pilot Program**

Barlow was excluded from participating in the pilot program because of the consent agreement that he entered into with DEM. This Court applies the principles of contract interpretation when reviewing a consent agreement. See Durfee v. Ocean State Steel, Inc., 636 A.2d 698, 703 (R.I. 1994) (holding that even after a consent agreement was adopted by a court, it was "in the nature of a solemn contract" and was "'to be construed as a contract using the rules of construction applicable thereto'", quoting Trahan v. Trahan, 455 A.2d 1307, 1310 (R.I. 1983) and Black's Law Dictionary 410-11 (6th ed. 1990)).

The consent agreement says that if Barlow "violate[s] a Rhode Island statute or regulation governing the taking of seafood products," after the agreement's execution date, DEM "shall not impose a second tier penalty" as would be administered for second offenses but, instead, "shall impose a first tier penalty" as if it were a first offense. See DEM Commercial License Suspension and Revocation Regulations, Rule 6.

Furthermore, it is meaningful that nowhere in the consent agreement does Barlow admit to any guilt or liability about the alleged violation. To the contrary, the consent agreement is crystal clear in its provision that it "shall operate to absolve [Barlow] from any liability arising for all violations alleged by [DEM] relative to the" inspection of Barlow's boat on May 22, 2007. (Emphases added.). Black's Law Dictionary 8 (9th ed. 2009) defines the word "absolve" to mean "[t]o release from an obligation, debt, or responsibility." In sum, the agreement cannot properly be read as imposing liability for conduct when it specifically frees him from it.

- 7 -

As the AAD opinion says, "where a party is 'absolved' from all liability regarding one incident, he cannot then be subject to future consequences in another incident to which he and [DEM] have not otherwise expressly agreed." The consent agreement, by its terms, was meant to be a "resolution of all disputed issues in th[e] matter." Barlow fulfilled all of his obligations and fully complied with the terms of the agreement, yet DEM failed to uphold its end of the bargain when it imposed additional consequences to which Barlow did not agree. Thus, DEM wrongly used the consent agreement as a reason to bar him from the program.[3]

## IV

## Conclusion

For the reasons set forth in this opinion, we quash the judgment of the Superior Court. The papers in the case are remanded to the Superior Court with our decision endorsed thereon with directions to enter judgment in favor of the petitioner consistent with this opinion.

---

[3] Because we decide this case in Barlow's favor solely on the ground that the consent agreement was not an administrative penalty, we need not, and do not, reach Barlow's other arguments.

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT
ADMINISTRATIVE ADJUDICATION DIVISION

RE: BARLOW, DANIEL R.             :      AAD No. 07-010/ENE
NOTICE OF SUSPENSION MPURP #000926

CONSENT AGREEMENT

This Agreement is entered into by and between the RHODE ISLAND
DEPARTMENT OF ENVIRONMENTAL MANAGEMENT DIVISION OF LAW
ENFORCEMENT with its offices located at 235 Promenade Street, Providence, Rhode
Island 02908 (the "DIVISION") and Daniel R. Barlow doing business as a seafood
harvester (the "Respondent"). This Agreement is entered into pursuant to the authority
of R.I. Gen. Laws § 42-17.I -2.

This action is before the Administrative Adjudication Division (the "AAD")
pursuant to a letter received by the AAD on behalf of the Respondent Daniel R.
Barlow (the "Respondent"), requesting a hearing before the AAD concerning the
Notice of Violation issued by the Division (the "Notice of Violation"). The Notice
of Violation notified the Respondent that his Multi-Purpose License MPURP
#000926 , and any and all commercial fishing licenses and permits issued by the
Department of Environmental Management to the Respondent or any corporation
in which the Respondent owns a majority interest would be suspended for a
period of Thirty (30) days. The Notice of Violation advised the Respondent that
the suspension was being imposed as a result of an inspection of the
Respondent's vessel, F/V Cracker Jac which was conducted on May 22, 2007 at
the State Pier at Point Judith by officers of the Division of Law Enforcement of
the Department of Environmental Management. The inspection allegedly
revealed that the Respondent was in violation of the RI Marine Fisheries
Regulations governing the possession of summer flounder at the time of the
inspection. Specifically, the investigation allegedly revealed that Respondent
was in violation of R.I. Gen. Laws § 20-1-4 and RIMFR Section 7.72-2 he had
landed one hundred thirty seven pounds (137 lbs.) of summer flounder when the
limit was one hundred pounds (100 lbs.).

I

DEC15'08 09:41 DEMARD

In lieu of proceeding to hearing, and in order to effect a resolution of all disputed issues in this matter, the parties agree as follows:

1. The Administrative Adjudication Division has jurisdiction over the subject matter and personal jurisdiction over the Respondent for purposes of this Agreement.

2. The provisions of this Agreement shall apply to and be binding upon the Respondent, Respondent's agents, successors and assigns, and all persons, firms and corporations acting under, through or for the Respondent.

3. Compliance with the terms of this Agreement does not relieve the Respondent from compliance with any applicable laws or regulations administered by the Department of Environmental Management (the "Department" or "DEM") or any other governmental entity.

4. This Agreement shall operate to absolve the Respondent from any liability arising for all violations alleged by the Division relative to the inspection of Respondent's vessel, F/V Cracker Jac which was conducted on May 22, 2007 at the State Pier at Point Judith by officers of the Division of Law Enforcement of the Department of Environmental Management.

5. This Agreement shall have the full force and effect of a final administrative adjudication, shall be deemed a final administrative decision under the Administrative

2

Procedures Act (R.I. Gen. Laws Chapter 42-35) from which no timely appeal was taken, and shall be fully enforceable in the Superior Court of the State of Rhode Island.

6. Respondent's Multi-Purpose License MPURP #000926 and any and all commercial fishing licenses and permits issued by the Department of Environmental Management to the Respondent or any corporation in which the Respondent owns a majority interest shall be suspended for a period of Ten (10) days commencing at 12:01 a.m. on the day following receipt by the offices of the RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT DIVISION OF LAW ENFORCEMENT located at 235 Promenade Street, Providence, Rhode Island 02908 of the Respondent's Multi-Purpose License MPURP #000926 as well as any and all such licenses and permits and terminating at 11:59 p.m. ten (10) days after the commencement of the suspension of Respondent's license.

7. Pursuant to the terms of this Agreement, the Division agrees that should the Respondent be determined, following the date of the execution of this Agreement, to have violated a Rhode Island statute or regulation governing the taking of seafood products and the Department elects to proceed administratively relative to said violation, the Department shall not impose a second tier penalty suspending thereby said license(s) for a period of up to ninety (90) days. Rather, the Division shall once again seek to impose a first tier penalty suspending Respondent's license(s) for a period of thirty (30) days as a result of said violation.

8. The Division hereby confirms that this Agreement constitutes a resolution of all investigations either

3

criminal or administrative concerning the Respondent by or within the Division pending or existing on the effective date of this Agreement.

9. This Agreement may only be amended in writing executed by all the parties to this Agreement.

10. This Agreement shall be deemed entered as of the date of execution by the Department.

Daniel R. Barlow

By:

_Daniel R. Barlow_

Daniel R. Barlow

Department of Environmental Management

By:

_Steven Hall, Chief_

Steven Hall, Chief
Division of Law Enforcement

Date: _12/09/08_    Date: _12-12-08_

4



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   State of Rhode Island Department of Environmental Management v. Administrative Adjudication Division.

**CASE NO:**   No. 2011-81-M.P.
(PC 10-5700)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   December 6, 2012

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**   Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Bennett R. Gallo

**ATTORNEYS ON APPEAL:**

For Petitioner:  Merlyn P. O'Keefe, Esq.

For Respondent:  Gary Powers, Esq.