Justice Indeglia, with whom Justice Flaherty joins, dissenting.
For the following reasons, I agree with the majority as to its conclusion that the matter before the Court is moot; however, I respectfully dissent as to the issue of whether the exception to the mootness doctrine should apply to the facts of this case.
I do recognize that "[w]e generally decline to address moot cases because without the presence of a justiciable case or controversy, judicial power is at its weakest ebb." Robar v. Robar , 154 A.3d 947, 948 (R.I. 2017) (mem.) (deletions omitted) (quoting Hallsmith-Sysco Food Services, LLC v. Marques , 970 A.2d 1211, 1213 (R.I. 2009) ). However, we have also noted that " 'a determination of mootness does not always preclude judicial review,' and that we exercise our discretion in considering cases that are 'of extreme public importance, which are capable of repetition but which evade review.' " Id. (quoting Hallsmith-Sysco Food Services, LLC , 970 A.2d at 1214 ). While I concur with the majority opinion as to the hearing justice's determination that the union's claims (regarding the town's authority to accept or reject a CBA) became moot after the parties agreed on a three-year CBA that was approved by the town, I respectfully disagree with the conclusion of the hearing justice *428 and the majority that the mootness exception does not apply to the circumstances in this case.
"The exception has a two-pronged test." State Department of Environmental Management v. Administrative Adjudication Division , 60 A.3d 921, 924 (R.I. 2012) ( AAD ). To satisfy the first prong-the demonstration of "extreme public importance"-"important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights" are usually implicated. Id. (quoting City of Cranston v. Rhode Island Laborers' District Council, Local 1033 , 960 A.2d 529, 533-34 (R.I. 2008) ( Local 1033 )). "This Court will exercise its discretion in determining if a matter raised on appeal is of such importance." Local 1033 , 960 A.2d at 534.
The second prong of the mootness exception requires that "the petitioner must demonstrate that 'the controversy is capable of repetition and will evade review.' " AAD , 60 A.3d at 924 (quoting Unistrut Corp. v. State Department of Labor and Training , 922 A.2d 93, 99 (R.I. 2007) ). "A case is capable of repetition yet evading review if there is a reasonable expectation that the complaining party or other similarly situated individuals would be subjected to the same action again." In re Briggs , 62 A.3d 1090, 1097 (R.I. 2013) (brackets omitted) (quoting Boyer v. Bedrosian , 57 A.3d 259, 281 (R.I. 2012) ).
In Preservation Society of Newport County v. City Council of City of Newport , 155 A.3d 688 (R.I. 2017), the applicants were before this Court seeking review of the city council's decision denying two applications for licenses that would have allowed the applicants to sell pre-wrapped food, snacks, and drinks at two mansions in Newport. Preservation Society , 155 A.3d at 689. We held that the matter was moot because a one-year license period had long elapsed; however, we determined that the exception to the mootness rule applied. Id. at 692 n.7. This Court explained that there existed a "manifest public interest in the instant licensing issue" and the "case [fell] within the parameters of" the exception "for cases that are of extreme public importance and are capable of repetition yet evade judicial review." Id.
We similarly applied the exception in AAD . In that case, a fisherman sought review of a Superior Court decision that reinstated a decision by the Rhode Island Department of Environmental Management (DEM) Division of Fish and Wildlife that found the fisherman ineligible to participate in its pilot summer fishing program because of a consent agreement that the fisherman and DEM had previously entered into as a settlement of the fisherman's alleged prior violation of the fishing regulations. AAD , 60 A.3d at 922. The DEM reasoned that the consent agreement constituted an administrative penalty that disqualified the fisherman from participating in the pilot program, and a Superior Court justice agreed. Id. at 923. Because the fishing program at issue had ended by the time the case reached this Court, the fisherman conceded that the matter was moot, but nevertheless argued that the exception for matters of "extreme public importance" should apply. Id. at 924. This Court concurred, holding that the exception did apply because the matter concerned the fisherman's livelihood, "as well as [those of] other fishermen who may be denied participation in similar fishing programs or may be denied fishing licenses altogether[.]" Id. at 925. The Court further held that the second prong of the exception applied because DEM could initiate a similar program at any time and could make similar exclusions as they did in this particular fisherman's case. Id. Moreover, the Court reasoned that, in *429 light of the short duration of the pilot programs, "[i]t would be highly unlikely that an applicant could fully litigate any matter concerning such a program before it expired[.]" Id.
With all due respect to the majority, it is my opinion that the unique facts of this case and the nature of the parties' ongoing interactions fall squarely within the exception for cases of extreme public importance, and thus justify the exercise of this Court's discretion. See Local 1033 , 960 A.2d at 534. As was the case with the food-service licenses at stake in Preservation Society , and the fisherman's livelihood in AAD , here the issue concerns agreements that do indeed govern the union members' livelihoods, which we have determined satisfies the requirement of "extreme public importance." See Preservation Society , 155 A.3d at 692 n.7 ; AAD , 60 A.3d at 924.
Moreover, this is a matter capable of repetition yet evading review. Due to the nature of the parties' dealings, and in light of state law governing labor relations with teachers, the union and the school committee have the obligation to negotiate a new CBA at least every three years, if not more often, and, each time the parties negotiate, the town could attempt to reject the terms of a new CBA. See G.L. 1956 § 28-9.3-4 (setting forth the obligation of the school committee and union representative to bargain and explaining that the "obligation includes the duty to cause any agreement resulting from negotiations or bargaining to be reduced to a written contract; provided, that no contract shall exceed the term of three (3) years"). As opposed to AAD , where this Court theorized that DEM may create another program in the future that could similarly affect other fishermen (and therefore the issue of DEM's denial of applications based on prior violations was capable of evading review), here, the occurrence of the negotiations every three years, at the longest, is guaranteed. See AAD , 60 A.3d at 925.
The town suggests that our decision in Local 1033 established that a three-year period is not short enough to be considered capable of evading review. After revisiting our opinion in Local 1033 , and the decisions cited therein, I conclude that the facts of those cases are distinguishable from those in this matter, and I stress that the three-year timeframe is not the critical factor here.
In Local 1033 , the union had filed suit against the city after the city laid off all its crossing guards, arguing that the layoffs violated the CBA. Local 1033 , 960 A.2d at 530. An arbitrator determined that the city violated the CBA, but the Superior Court vacated that decision and determined that the no-restructuring clause in the CBA was void. Id. at 530, 534. On appeal, we explained that "we are presented with a question concerning a long-since-expired term in the parties' collective-bargaining agreement." Id. at 535. Accordingly, we held that an opinion from this Court would not affect the parties "because the no-restructuring clause terminated by its own conditions" prior to this Court deciding the case. Id.
Similarly, in Sullivan v. Chafee , 703 A.2d 748 (R.I. 1997), members of the city council sought a declaratory judgment to determine the operative municipal budget and tax rate for the 1997 fiscal year. Sullivan , 703 A.2d at 749. But, by the time the matter reached this Court, we held that "the issue of which budget and which tax rate should be deemed operative for the 1997 fiscal year is now a moot question because the 1997 fiscal year has concluded and plaintiffs are no longer seeking a ruling that would invalidate that particular budget and tax rate." Id. at 753.
*430 Finally, in Town of Scituate v. Scituate Teachers' Association , 110 R.I. 679, 296 A.2d 466 (1972), the town sought a declaratory judgment as to whether it was bound to a CBA between the teachers' association and the school committee and was thereby required to pay the teachers a salary that had been negotiated. Town of Scituate , 110 R.I. at 680, 296 A.2d at 467. After the trial justice heard the case, but before the matter reached this Court, the CBA expired, and the town had appropriated the necessary funds to pay the teachers the agreed-upon salary. Id. at 683, 296 A.2d at 468-69. We held that the matter was moot because the CBA had long since expired by the time this Court heard the case in which the school committee sought a judicial declaration regarding whether a term in the CBA was binding despite town budget constraints. Id. at 684, 296 A.2d at 469.
Contrary to those cases, here, the union did not file for a declaratory judgment seeking a determination regarding a specific term of a CBA or regarding a charter provision applicable only to a discrete CBA. Instead, the union seeks a judicial declaration concerning the effect of the charter provision-a question that will affect all future CBAs that the union and the school committee negotiate. Again, the three-year timeframe is not the determinative factor here. While we did state in Local 1033 that "[t]he three-year term of a collective-bargaining agreement, however, is not of such an 'inherently brief duration' that it would 'almost invariably be too short to enable full litigation on the merits[,]' " I emphasize that my conclusion here does not rely on the time period of the parties' CBAs. See Local 1033 , 960 A.2d at 536 (quoting Driver v. Town of Richmond ex rel. Krugman , 570 F. Supp. 2d 269, 274 (D.R.I. 2008) ). Instead, I believe that the crux of the matter is the fact that the parties will constantly renegotiate successor CBAs, and the fact that the town could assert a veto authority pursuant to the charter in each instance.
In reaching this conclusion, I considered several scenarios to determine if this issue is capable of evading review. In the first scenario, I imagined that the union could file for declaratory judgment at the start of the next negotiation, to obtain resolution of the question of the town's authority under the charter. However, that scenario would require that the union wait for the judicial process to interpret the town's authority; and, in the meantime, the union would be forced to halt all negotiations and refuse any further offers or attempts to reach an agreement. As discussed above, such an approach would collide with the union's duty to negotiate on behalf of its members; this scenario would thwart that duty. Moreover, as the facts of this case exhibit, when the parties cannot initially reach an agreement, they typically pursue mediation and continue negotiating until an agreement is reached. Thus, to suggest that the union refile a claim for declaratory judgment the next time the parties return to negotiate would equate to this Court forcing the union to decide between either obtaining an answer as to the town's authority under the charter or fulfilling its mandated duty to negotiate.
Similarly, to suggest that the union should seek declaratory judgment if and when the town rejects a proposed CBA in the future would also effectively force the union to forgo its duty to negotiate on behalf of its members. While I acknowledge that it very well could be the case that the town continues to approve CBAs negotiated and ratified by the union and the school committee, the question of the town's authority has a continuing effect on the negotiations because the town's interest as a nonpresent third party with veto power will inevitably be a consideration in *431 the negotiation process between the union and the school committee.
In either scenario, the union would be required to wait a length of time that could amount to years for a case to be litigated to its completion in order to preserve its declaratory-judgment claim. The union, in the meantime, would be forced to decline to further negotiate. Thus, without forcing the union to decide between seeking a judicial declaration as to the town's authority under the charter and fulfilling its duty to negotiate on behalf of its members, I cannot fathom a situation in which the union could obtain declaratory judgment to resolve the question of whether the town has the authority to accept or reject a CBA negotiated by the union and the school committee. This Court's determination that the union's claim is moot and that the exception does not apply creates a "catch-22" scenario for the union and will, as a matter of practicality, deprive the union of its ability to seek a declaratory judgment.[1]
Therefore, because the charter is effective indefinitely and will come into play each and every time the parties return to the negotiating table, and because the union could receive an answer only in the event it neglects its obligation to negotiate with the school committee in the future, thus affecting the livelihood of the union members, the controversy is capable of repetition yet evading review, and the mootness exception should apply. For these reasons, I respectfully dissent.

"The term 'catch-22' derives from a Joseph Heller novel by the same name. Although somewhat difficult to define precisely, it generally refers to a paradoxical rule which creates an illogical or senseless situation in which one is faced with two equally undesirable alternatives." City of Pawtucket v. Pimental , 960 A.2d 981, 988 n.6 (R.I. 2008).