Council President Linda
SULLIVAN et al.

v.

Lincoln D. CHAFEE, in His Capacity as
Mayor of the City of Warwick.

No. 97–156–Appeal.

Supreme Court of Rhode Island.

Nov. 14, 1997.

Russell Bramley, John J. Harrington, Warwick, for Plaintiff.

William E. Smith, Providence, Marc A. Crisafulli, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

We speak here of judicial power and justiciability, of indispensable parties and mootness, and of city council budget votes and mayoral vetoes.

The plaintiffs, four current members and one former member of the nine-person Warwick City Council (the council),[1] appeal from a Superior Court declaratory judgment concerning a dispute involving the city's municipal budget for the fiscal year that ended on June 30, 1997 (FY 1997). The Superior Court's judgment rejected the plaintiffs' proposed interpretation of various budgetary provisions contained in the Warwick City Charter (the charter) and adopted an interpretation favored by the defendant, Lincoln D. Chafee, the Mayor of the City of Warwick (the mayor).

However, in their appeal from this judgment, plaintiffs are no longer requesting any declaratory relief or other remedy concerning the city's FY 1997 budget. Nonetheless, asserting that the charter-interpretation issues raised by their FY 1997 budget dealings with the mayor are likely to recur in future years, plaintiffs ask us to correct the alleged legal errors in the Superior Court's analysis and to declare how the budget process is supposed to work under the city's charter so that the council and the mayor can be guided by our advice in future fiscal years.

For the reasons set forth below, we conclude that the present posture of this case is such that we no longer have a justiciable controversy that is suitable for declaratory relief and that, in any event, plaintiffs have failed to join indispensable parties.[2] Accordingly we vacate the judgment of the Superior Court and dismiss the appeal.

## I

### Facts and Travel

This litigation arose out of a disagreement between plaintiffs and the mayor over the

---

1. The plaintiffs are former council president Linda Sullivan and current council members Eugene Kelly, Carlo Pisaturo, Donna Travis, and Alfred Ferruolo.

2. We shall assume without deciding that plaintiffs have standing to maintain this lawsuit. At oral argument, plaintiffs asserted that a majority of the present city council had voted to authorize them to take this appeal after the Superior Court issued its declaratory judgment. Although the record on appeal contained no evidence of such an authorization, plaintiffs filed a post-argument motion to supplement the record, together with a copy of a city council resolution indicating that the council had voted (by a seven to two margin) to authorize and to pay for the cost of plaintiffs' appeal. In addition, plaintiffs moved post-argument for leave to have another council member intervene as a plaintiff to this action. However, we deny both of these motions as procedurally improper, untimely, and in any event unavailing to plaintiffs because, for the reasons explained in this opinion, even if we were to grant these motions it would not cure the problems which mandate dismissal of this appeal.

adoption of the city's FY 1997 budget. The parties have stipulated to the facts.

Under the charter the mayor must submit a proposed budget and budget message to the council at least thirty days before the commencement of each fiscal year; that is, by June 1. On May 22, 1996, the mayor made such a budget submission (mayor's budget). It included a proposed tax rate of $34.75 per $1,000 of assessed value, an increase of $0.65 per $1,000 over the then-existing tax rate. On June 1, ten days after the mayor's initial budget submission, the council conducted a public hearing on the mayor's budget. (The council is required to hold public hearings on seven days' advance notice to the public before it adopts the annual budget.)

Initially the council placed the mayor's budget on its June 10 meeting agenda, but the council's finance committee held it until June 13. On June 13 the city's finance director, on behalf of the mayor, amended the mayor's budget to lower his proposed tax rate by $0.15 per $1,000 of assessed value to $34.60. Later that same day the council voted five to four to reject the mayor's amendment and to adopt a revised budget (council's budget). The council's budget imposed a lower tax rate of $34.10, which was the same rate used in the FY 1996 budget.

The next day, on Friday, June 14, the mayor advised the council by letter that because he disapproved of the council's budget, he was vetoing it and every line item therein except for school appropriations. In addition, he notified the council that pursuant to the "final action" provision of Article V, section 5–7 of the charter,[3] his June 13 amended budget, including its revised $34.60 tax rate, would become the operative budget for the city at midnight on June 15. The council did not meet before midnight on June 15 but next convened at its regularly scheduled meeting on Monday, June 17. There, plaintiffs attempted to override the mayor's veto and disapproval by mustering the requisite

six votes. However this attempt failed when only the five plaintiffs voted to override the veto.

On June 19 plaintiffs filed a lawsuit against the mayor under the Uniform Declaratory Judgments Act, G.L.1956 chapter 30 of title 9, seeking a ruling that under the terms of the charter (1) the budget and the tax rate imposed by the mayor at midnight on June 15 were null and void, (2) the budget and the tax rate adopted by a majority of the council on June 13—before the mayor's disapproval and veto on June 14—were the operative budgetary provisions for FY 1997, and (3) the mayor possessed only a limited veto power as to budgetary matters which had not been properly exercised vis-à-vis the FY 1997 budget (to wit, the mayor could veto only that portion of the council's budget containing any additions or increases in the line items of the mayor's budget). On July 11, the Superior Court ruled and declared that (1) the mayor's budget was the operative budget for Warwick for FY 1997, (2) the mayor's revised tax rate of $34.60 per $1,000 of assessed valuation was the operative tax rate, and (3) the mayor's disapproval and line-item vetoes of the council's FY 1997 budget were lawful exercises of his powers under the charter.

In their appeal of the Superior Court decree to this court, plaintiffs no longer seek a declaration that the budget and the tax rate adopted by the council on June 13, 1996 should be imposed retroactively for the 1997 fiscal year. Because the 1997 fiscal year has already ended (after the city operated throughout that year under the mayor's budget), plaintiffs are concerned that such a retroactive ruling by this court on appeal could have a serious adverse financial impact on the city. Thus plaintiffs now seek to limit their appeal to the validity of the Superior Court's legal analysis concerning how the charter's budgetary provisions work between the mayor and the council. They also assert that if the Superior Court's ruling is not reversed it will precipitate "recurring prob-

---

**3.** Article V, section 5–7 of the Warwick City Charter provides as follows: "The budget for the ensuing fiscal year shall be finally adopted not later than the fifteenth day of the last month of the current fiscal year. Should the council take no final action on or prior to such day, the budget, as submitted by the mayor, shall be deemed to have been finally adopted by the council."

lem[s] which will take place every year in the budget process."

## II

### Analysis

#### A. Standard of Review

 The decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments Act is purely discretionary. *Woonsocket Teachers' Guild Local Union 951, AFT v. Woonsocket School Committee,* 694 A.2d 727, 729 (R.I.1997); *Lombardi v. Goodyear Loan Co.,* 549 A.2d 1025, 1027 (R.I.1988). However, that discretion is not absolute and is subject to appropriate appellate review. *State v. Cianci,* 496 A.2d 139, 146 (R.I.1985). When the Superior Court exercises its discretion to issue such a judgment, its decision should remain untouched on appeal unless the court improperly exercised its discretion or otherwise abused its authority. *Woonsocket,* 694 A.2d at 729. Accordingly we review a declaratory decree of the Superior Court with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority.

#### B. Mootness

 As a preliminary matter the mayor contends that plaintiffs' abandonment on appeal of any request for relief vis-à-vis FY 1997 means that there is no longer any justiciable case or controversy and that, therefore, their appeal should be dismissed because they are making an improper request for an advisory opinion.

 It is well established in this state that a necessary predicate to a court's exercise of its jurisdiction under the Uniform Declaratory Judgments Act is an actual justiciable controversy.[4] A declaratory-judgment action may not be used "for the determination of abstract questions or the rendering of advisory opinions," *Lamb v. Perry,* 101 R.I. 538, 542, 225 A.2d 521, 523 (1967), nor does it "license litigants to fish in judicial ponds for legal advice." *Goodyear Loan Co. v. Little,* 107 R.I. 629, 631, 269 A.2d 542, 543 (1970). We recently reaffirmed this well-settled principle in the *Providence Teachers Union* case, concluding that a potential dispute between substitute public school teachers and the city of Providence over the city charter's residency requirements was not yet ripe for decision nor appropriate for a declaratory-judgment action. *Providence Teachers Union v. Napolitano,* 690 A.2d 855, 856 (R.I.1997); *see also Sasso v. State,* 686 A.2d 88, 91 (R.I.1996) (refusing to provide declaratory relief concerning speculative and as yet unrealized future factual scenarios). With these familiar but important principles in mind, we turn to the case at hand.

First, the mayor contends that plaintiffs are seeking what amounts to advisory guidance from us in connection with the city council's future budget dealings with the mayor based on the alleged potential recurrence of the same budget brouhaha they faced as council members in 1996. But as the mayor points out, plaintiffs' request for legal guidance concerning the charter's meaning of "final action" is premised on a precise factual scenario that may never occur again—or at least not with the same parties and with the same factual underpinnings as occurred in connection with the FY 1997 budget.

Indeed, because plaintiffs are no longer asking us to invalidate the city's FY 1997 budget, our decision would rest upon a speculative future factual scenario that in whole or in part may never come to pass. Among the many facts that we would have to posit in reaching the merits of this claim are: first, we would have to assume a recurrence of the

---

4. *See Providence Teachers Union v. Napolitano,* 690 A.2d 855, 856 (R.I.1997) ("the party seeking declaratory relief must present the court with an actual controversy"). *See also Newbay Corp. v. Sisson,* 621 A.2d 1250, 1251 (R.I.1993) (deferring review of Superior Court declaratory judgment "in order to determine whether there is an actual controversy at stake"); *State v. Cianci,* 496 A.2d 139, 146 (R.I.1985) ("[t]he main prerequisite to successful prosecution of an action for declaratory judgment is the existence of an actual or justiciable controversy"); *Langton v. Demers,* 423 A.2d 1149, 1150 (R.I.1980) ("plaintiff failed to establish the essential prerequisite of the existence of an actual or justiciable controversy"); *Goodyear Loan Co. v. Little,* 107 R.I. 629, 631, 269 A.2d 542, 543 (1970); *Lamb v. Perry,* 101 R.I. 538, 542, 225 A.2d 521, 523 (1967).

same sort of budget disagreement between the mayor and a majority of the council as existed in 1996; second, we would have to hypothesize the adoption by the council of a future budget that differs from the mayor's in the same way that the council's proposed FY 1997 budget differed from the mayor's budget for that year; third, we would need to presume a timely veto by the mayor communicated in sufficient time to allow the council to override it by the June 15 final-action deadline; and further, we would have to suppose that the council would fail to override the veto either before or after the June 15 deadline. Absent such factual assumptions, we would have to opine in the abstract on the meaning of the charter and its pertinent provisions.

The mayor further argues that plaintiffs' request for a declaration about whether the mayor has power to use both his disapproval power and the line-item veto also requires us to render an impermissible advisory opinion. The plaintiffs' request for guidance, the mayor claims, might be proper in a situation wherein the council overrode a line-item veto in a timely fashion but failed to override the mayor's disapproval of the entire budget before June 15 of a given year. But that is not what happened to the mayor's 1996 rejection of the council's changes to his proposed budget. Here the council failed to override the mayor's actions in rejecting the council's FY 1997 budget changes at any time, let alone before the June 15 final-action deadline. Consequently the mayor's budget became the operative financial directive for the city's FY 1997, and that year is now over. Thus the questions plaintiffs pose to us are purely academic ones.

■ We acknowledge, of course, that the mere fact that a court is being asked to render an advisory opinion does not automatically preclude a declaratory judgment in all

situations. This court previously has held that the rule against judicial consideration of moot, abstract, academic, or hypothetical questions is not absolute. *Morris v. D'Amario*, 416 A.2d 137, 139 (R.I.1980). But in such cases the issuance of declaratory relief has been deemed appropriate only when the question(s) presented, although technically moot or deficient in some other respect, involved issues "of extreme public importance, which are capable of repetition but which evade review." *Id.* The reason this is so is that whenever a court acts without the presence of a justiciable case or controversy, its judicial power to do so is at its weakest ebb. Although the Rhode Island Constitution places no explicit case or controversy limit on the exercise of the judicial power, this court previously has concluded that "our whole idea of judicial power" is the power of courts to apply laws to cases and controversies within their jurisdiction:

> "Indeed, laws and courts have their origin in the necessity of rules and means to enforce them, to be applied to cases and controversies within their jurisdiction; and *our whole idea of judicial power is, the power of the [courts] to apply the [laws] to the decision of those cases and controversies.* To affect to decide, or to control the decision, of a case or controversy which has arisen at law or in equity, or to interfere with its progress, or to alter its condition in any way, is to assume the exercise of judicial power." (Emphasis added.) *G. & D. Taylor & Co. v. Place*, 4 R.I. 324, 337 (1856).

Accordingly, because "our whole idea of judicial power" is entailed within the concept of courts applying laws to cases and controversies within their jurisdiction,[5] a court issuing declaratory relief is treading on thin legal ice every time it chooses to skate around the case or controversy requirement. Like the United States Supreme Court, "[t]his is a

---

5. We note that there is one constitutional exception to the case and controversy predicate to the exercise of our judicial power. Article 10, section 3, of the Rhode Island Constitution mandates that this court give its written opinion "upon any question of law whenever requested by the governor or by either house of the general assembly." As a result, we are constitutionally obliged to render an advisory opinion to either house of the General Assembly "when the questions propounded concern the constitutionality of pending legislation" and to the Governor "when the questions propounded concern the constitutionality of existing statutes which require implementation by the Chief Executive." *In re Advisory Opinion (Chief Justice)*, 507 A.2d 1316, 1318–19 (R.I.1986).

court of review, not a tribunal unbounded by rules. We do not sit like a kadi under a tree dispensing justice according to considerations of individual expediency." *Terminiello v. City of Chicago,* 337 U.S. 1, 11, 69 S.Ct. 894, 899, 93 L.Ed. 1131, 1138 (1949) (Frankfurter, J., dissenting).

Here the issue of which budget and which tax rate should be deemed operative for the 1997 fiscal year is now a moot question because the 1997 fiscal year has concluded and plaintiffs are no longer seeking a ruling that would invalidate that particular budget and tax rate. Thus, even if we were to assume without deciding that the original complaint raised a live justiciable controversy brought by persons with the standing to do so, when, as here, later events deprive the litigants of an ongoing personal stake in the controversy, the action is moot. *See Seibert v. Clark,* 619 A.2d 1108, 1110 (R.I.1993).

■ Moreover, although the same or similar legal questions might possibly arise in future budget dealings between some of or all these same council members and this or a different mayor, we are unable to conclude that this particular factual situation is one that is likely both to recur and yet to evade judicial review. First, there is plenty of time for the charter to be amended to eliminate any ambiguity that may presently exist or to rectify any perceived inequity in the existing budget-adoption process. Second, on at least one previous occasion, we have deemed it advisable to abstain in the face of no actual or present controversy to afford the Legislature a "prior opportunity" to clarify municipal legislation. *See Town of Scituate v. Scituate Teachers' Association,* 110 R.I. 679, 684–85, 296 A.2d 466, 469 (1972). Third, in the thirty-five-year history of budget dealings between Warwick's mayor and the city council under this charter, this is apparently the one and only occasion when one or more of the affected parties have had to resort to litigation over the budget or to seek declaratory relief concerning how the budget process is supposed to work under the charter.

Finally, although the adoption of a municipal budget is certainly a subject of public importance—not only because it establishes the taxpayers' liability but also because it sets the funding levels for essential public services—resolution of the abstract legal questions presented by this appeal does not partake of that extreme degree of public importance that we have previously found to be necessary to overcome the want of a live case or controversy. Thus, we agree with the mayor's contention that the extreme-public-importance exception is unavailing for these plaintiffs. But we do so not because, as he argues, the applicable precedents in this area "usually" surface in the context of pretrial bail denials—a factual scenario that is, of course, inapposite here. Although the mayor is correct in noting that the extreme-public-importance exception has been applied to bail cases, *see, e.g., Witt v. Moran,* 572 A.2d 261 (R.I.1990); *Morris v. D'Amario,* 416 A.2d 137 (R.I.1980), it also has been invoked by this court in a number of other contexts. For example, we have allowed otherwise nonjusticiable cases to proceed when they relate to important constitutional rights, to matters concerning a person's livelihood, or to citizen voting rights. *See, e.g., In re Amanda M.,* 626 A.2d 1277, 1278 (R.I.1993) (clarifying obligation of Department of Children, Youth and Families to make rent payments); *Burns v. Sundlun,* 617 A.2d 114, 116 (R.I.1992) (addressing right of public to vote at public referendum on matter of substantial local interest); *Providence Journal Co. v. Superior Court,* 593 A.2d 446, 448 (R.I.1991) (addressing issue of closure of trial court during voir dire examination of prospective jurors); *Gelch v. State Board of Elections,* 482 A.2d 1204, 1207 (R.I.1984) (addressing citizen's eligibility to hold public office). However, we have been loath to relax the rule insisting upon an actual, justiciable controversy in situations in which the subject matter of a case merely relates to ordinary contract disputes, *Rosciti Construction, Inc. v. Lemieux,* 118 R.I. 307, 309, 373 A.2d 1193, 1194 (1977), or to the binding effect of a collective bargaining agreement involving public school teachers, *Town of Scituate,* 110 R.I. at 683–84, 296 A.2d at 468–69, or to an accused's questions about the length and conditions of his anticipated incarceration, *Berberian v. Travisono,* 114 R.I. 269, 275, 332 A.2d 121, 124 (1975).

The case at bar involves no constitutional issues and does not concern any person's livelihood or right to exercise his or her voting franchise. Instead, as in the *Providence Teachers Union* case, it pertains to the construction of certain provisions in a municipality's charter. And the case is presented to us in the form of hypothetical facts that may or may not ever recur by a group of council members who are arguably insufficient in number to have any future budget they may choose to adopt become law notwithstanding a mayoral veto. For these reasons, we conclude that plaintiffs' appeal lacks extreme public importance, does not involve questions that are likely to recur yet evade judicial review, and thus should be dismissed for want of a justiciable controversy.

## C. Nonjoinder of All City Council Members

We also hold that plaintiffs' failure to join all nine city council members as parties to the lawsuit is fatal to their declaratory-judgment action. *See* § 9–30–11 ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."). A court may not assume subject-matter jurisdiction over a declaratory-judgment action when a plaintiff fails to join all those necessary and indispensable parties who have an actual and essential interest that would be affected by the declaration. *In re City of Warwick,* 97 R.I. 294, 296, 197 A.2d 287, 288 (1964).

In *In re City of Warwick* the mayor sought a declaration about whether certain provisions of Warwick's municipal charter governed the manner in which members of three local boards were to be elected. *Id.* at 295–96, 197 A.2d at 287–88. We concluded that the mayor's failure to join all members of these boards meant that any declaratory judgment issued by the court would have no binding effect on the absent board members, thereby eviscerating the essential termination-of-controversies purpose of such an action. *Id.* at 296–97, 197 A.2d at 288. We decided that we would neither excuse non-joinder nor allow the appearance of fewer than all board members to constitute representation of all the board members who had an interest in that controversy—especially because it was not impracticable (because of board size or unavailability for service of process) for the plaintiff mayor to have joined all interested board members. *Id.* at 298, 197 A.2d at 289; *see also Thompson v. Town Council of Westerly,* 487 A.2d 498, 500 (R.I.1985) (dismissing for lack of jurisdiction because the plaintiffs' failure to join necessary parties meant judgment would not be binding on all persons who had an interest in the dispute).

For similar reasons, we decline here to excuse the plaintiffs' failure to join as indispensable parties to this lawsuit all the members of the nine-person Warwick City Council. Accordingly, the Superior Court should not have issued declaratory relief without the joinder of all council members as parties to the action.

## Conclusion

The plaintiffs' appeal is denied and dismissed for lack of a justiciable controversy and for their failure to join indispensable parties, and the Superior Court's declaratory judgment is vacated.