**Supreme Court**

No. 2014-191-M.P.

The Preservation Society of Newport County     :
               et al.

                 v.                     :

City Council of the City of Newport et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Preservation Society of Newport County : 
                et al.

                v.              :

City Council of the City of Newport et al.    :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Robinson, for the Court.** The petitioners, the Preservation Society of Newport County and Newport Catering, Inc., d/b/a Glorious Affairs, Ltd., seek review on certiorari of a May 2014 decision of the respondent, the City Council of the City of Newport (the Council), denying two applications for victualing licenses.[1] In their applications, the petitioners proposed to sell pre-wrapped food prepared off-site, along with snacks and nonalcoholic drinks, at two historic mansions in Newport: The Elms Carriage House (The Elms) and the Marble House Chinese Tea House (Marble House). On appeal, the petitioners contend that the Council impermissibly relied upon zoning considerations as its basis for denying their applications for victualing licenses; they further argue that, pursuant to § 5.72.020 of the Code of Ordinances of the City of Newport, the Council was required to consider only health and safety issues in deciding whether to issue or deny the licenses. For the reasons set forth in this opinion, the

---

[1]     Section 5.72.010 of the Code of Ordinances of the City of Newport defines a "Victualer" as "a restaurant, coffee shop, cafeteria, lunch cart, delicatessen, caterer, ice cream parlor, cafe, bar, luncheonette, tavern, sandwich stand, soda fountain, and all other types of eating or drinking establishments."

petition for certiorari is granted, and the decision of the Council is quashed. The Council is directed to issue the licenses forthwith, absent any compelling evidence of significant health and safety issues.

## I

## Facts and Travel

On May 7, 2014, petitioners jointly filed applications with the Council for victualing licenses.[2] In their applications, they proposed the following under the heading "Type of BUSINESS:"

> "Sale at [The Elms and Marble House] museum of pre-wrapped sandwiches, wraps and salads prepared off-site, soft drinks (including coffee and tea) and other snack foods to ticketed museum guests of the Preservation Society."

---

[2]  Section 5.72.020 of the Code of Newport Ordinances sets forth "[t]he following regulations * * * as prerequisites to the issuance of a victualing license by the [City Council]:"

> "A. The issuance of a victualing license is subject to the compliance by the applicant with all state and local building and fire prevention codes as well as the inspection and approval of the state department of health according to state law, [all of which must be presented in the applicant's report to the Council].
> "B. The applicant * * * must appear in person before [the Council] when the application is considered.
> "C. With the application presented to [the Council], the following information must be provided: 1. A detailed site plan showing the premises, interior and exterior, and parking areas; 2. A description and/or rendering of the architecture to be used; 3. A detailed description of the manner in which such license is to be used; 4. The proposed seating capacity; 5. Parking availability; 6. Whether or not a liquor license for the same premises is being applied for by the applicant; 7. If a liquor license is not being applied for, whether or not a liquor license for the same premises will be applied for in the future by the applicant; and 8. The estimated monetary investment involved."

In addition, petitioners stipulated that at no time would there be kitchen facilities or table service on the premises. Various Newport city officials—including the fire marshal, the building official, and the zoning enforcement officer—indicated in writing that they approved of petitioners' applications.

On May 28, 2014, at a Newport City Council hearing, the Council reviewed petitioners' applications for victualing licenses. The zoning enforcement officer of Newport, Guy Weston, testified that, in his judgment, the above-referenced applications are "approved for zoning" because they "conform[] with the [Newport] zoning code;" specifically, he indicated that "what [petitioners are] applying for" is a "permitted, customary accessory use to the museum."[3] Throughout Mr. Weston's testimony, Councilors Michael Farley, Justin McLaughlin, and Kathryn Leonard repeatedly questioned and expressed disagreement with his interpretation of the Newport zoning ordinance (viz., his view that petitioners' proposed food service constituted an accessory use to a museum).[4] In response, Mr. Weston expressly noted that the Council was not authorized to decide zoning matters:

---

[3]    Counsel for Bellevue-Ochre Point Neighborhood Association, which organization was granted intervenor status, argued that petitioners' proposed food service is not a permitted accessory use with respect to museums in a residential zoning district. He further asserted that the Council was allowed to take into account zoning considerations in deciding whether to issue or deny victualing licenses.

[4]    Immediately prior to a vote by the Council on the issue of whether to grant or deny petitioners' applications, Council Chair Henry Winthrop made the following remarks:

> "Laws are open to interpretation. They're not written so specific that anybody can be a lawyer, or a judge, or for that matter a zoning officer. Our zoning officer [Guy Weston] has interpreted the law to say that serving sandwiches and soft drinks in a museum is an accessory use. He is the staff person that I rely on for the information. * * * Guy said that the only grounds on which we have to deny this license is on safety and health. I think everybody

"[MR. WESTON]: * * * What you are doing is actually illegal under your own ordinance. Again, you established a [zoning officer] * * * who interprets the code and renders a decision. Under state law and under our zoning code, if a person isn't happy with that, a certain person is able to appeal to a certain body. [The Council] is not that body.

"* * *

"[MR. WESTON]: Again, * * * you're getting into the [zoning] issues that aren't to be dealt with here before the City Council. I mean, if you want to, as a private citizen, file an appeal of my approval of [the instant applications], then we'll take it to the Zoning Board. That is the proper forum where we can argue these points."

Thereafter, counsel for petitioners stated that he was prepared to make a presentation with respect to "health and safety issues * * * because there is nothing further that is relevant." He then explained that the "Council can deny a [victualing] license for reasons related to health and safety, [but] not for zoning issues." Nevertheless, Councilor Jeanne-Marie Napolitano opted to express her concern about zoning issues.

In view of the disagreement about the pertinence of zoning considerations, and for the purpose of "present[ing] a record," counsel for petitioners requested that his two witnesses be permitted to testify. Those two witnesses did testify at some length, focusing on health and safety issues. However, for present purposes, there is no need to discuss the substantive testimony of those two witnesses. It should also be noted that, in addition, the Council heard brief comments from numerous members of the public supporting and opposing petitioners' applications for victualing licenses.[5]

_____

in this room is nodding their head and saying safety and health is not an issue. For that reason, I will vote to approve the license."

[5]     Some members of the public voiced concerns about increased traffic, adverse consequences for local restaurants, and food service operations in residential areas.

-5-

By a vote of four to three, the Council denied petitioners' applications for victualing licenses.[6] Subsequently, the Newport City Clerk sent a letter (dated May 30, 2014), addressed to petitioners and consisting of but a single sentence, which read as follows:

> "The Newport City Council, at its meeting on Wednesday, May 28, 2014, denied approval of Victualing Licenses applied for jointly by Barbara Howlett of Newport Catering, d/b/a Glorious Affairs, and the Preservation Society of Newport County, for the premises located at The Teahouse at the Marble House, 596 Bellevue Avenue, and The Elms Carriage House, 367 Bellevue Avenue."

Thereafter, petitioners filed a petition for writ of certiorari, urging us to quash the just-referenced decision of the Council. We granted that petition on June 8, 2015.

## II

## Standard of Review

In reviewing a case that is before us pursuant to a writ of certiorari, "we restrict our scrutiny of the record to the question(s) appearing in the petition." Kent County Water Authority v. State (Department of Health), 723 A.2d 1132, 1134 (R.I. 1999); see also Woodruff v. Gitlow, 91 A.3d 805, 809 (R.I. 2014). Our task is to "scour the record to discern whether any legally competent evidence supports the lower tribunal's decision and whether the decision-maker committed any reversible errors of law in the matter under review." Cullen v. Town Council of Lincoln, 893 A.2d 239, 243-44 (R.I. 2006) (internal quotation marks omitted). "If legally competent evidence exists to support that determination, we will affirm it unless one or more

---

[6]     Councilors Farley, McLaughlin, Leonard, and Napolitano—each of whom expressed various concerns, including with respect to zoning issues, at different points in time during the hearing—voted against petitioners' applications for victualing licenses. The remaining members (Council Chair Winthrop and Councilors Marco Camacho and Naomi Neville) voted in favor of granting the licenses.

errors of law have so infected the validity of the proceedings as to warrant reversal." Id. at 244 (internal quotation marks omitted).

### III

### Analysis

Before this Court, petitioners contend that the Council's decision must be quashed because that body "exceeded its jurisdiction and applied inappropriate criteria" in denying the sought-after victualing licenses.[7] However, in order for a decision of this nature to be in a proper posture for judicial review, we have consistently held "that municipal councils and boards acting in a quasi-judicial capacity must make findings of fact and conclusions of law to support their decisions."[8] Cullen v. Town Council of Lincoln, 850 A.2d 900, 904 (R.I. 2004); see also Cranston Print Works Co. v. City of Cranston, 684 A.2d 689, 691 (R.I. 1996); Eastern Scrap Services, Inc. v. Harty, 115 R.I. 260, 263, 341 A.2d 718, 720 (1975); Novak v. City Council of

---

[7] It is self-evident that the controversy concerning the vote of the Council in 2014 has long since become moot because the one-year license period has long since passed. See Hallsmith-Sysco Food Services, LLC v. Marques, 970 A.2d 1211, 1213 (R.I. 2009) ("This Court has consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy.") (internal quotation marks omitted). However, notwithstanding that the case at bar is moot, it should be recalled that we have recognized an exception to the mootness doctrine for cases that are of extreme public importance and are capable of repetition yet evade judicial review. City of Cranston v. International Brotherhood of Police Officers, Local 301, 115 A.3d 971, 977 (R.I. 2015). Especially in view of the manifest public interest in the instant licensing issue, it is our opinion that this case falls within the parameters of the just-referenced exception. See State Department of Environmental Management v. Administrative Adjudication Division, 60 A.3d 921, 925 (R.I. 2012); see also In re New England Gas Co., 842 A.2d 545, 554 (R.I. 2004).

[8] As we have repeatedly stated, city and town councils acting in a quasi-judicial capacity are required to set forth factual findings and legal conclusions in support of their decisions for the purpose of "facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction." Cullen v. Town Council of Lincoln, 850 A.2d 900, 904 (R.I. 2004); see Hooper v. Goldstein, 104 R.I. 32, 44, 241 A.2d 809, 815 (1968).

-7-

Pawtucket, 99 R.I. 41, 44, 205 A.2d 589, 592 (1964). A written decision, although strongly recommended, is not required; rather, this Court requires "the making of findings of fact and the application of legal principles in such a manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the * * * ordinance applied." Thorpe v. Zoning Board of Review of North Kingstown, 492 A.2d 1236, 1237 (R.I. 1985); see also May-Day Realty Corp. v. Board of Appeals of Pawtucket, 107 R.I. 235, 239, 267 A.2d 400, 403 (1970). Accordingly, we have held that council members "must do more than make a motion and take a vote. The determination must contain findings of fact which support the ultimate decision of the body." Sambo's of Rhode Island, Inc. v. McCanna, 431 A.2d 1192, 1194 (R.I. 1981). We may, "where appropriate, imply an ultimate finding from the action taken." Hooper v. Goldstein, 104 R.I. 32, 45, 241 A.2d 809, 816 (1968). This is especially appropriate after a careful review of the proceedings before the Council.

After carefully reviewing the entire record, it is clear to us that the Council failed to provide factual findings and legal grounds to support its decision denying the petitioners' applications for victualing licenses. Neither the City Clerk's terse denial letter of May 30, 2014 to the petitioners nor the transcript of the hearing before the Council contained a statement of the reasons relied upon by the Council for its decision. The record reveals a failure on the part of the Council to have cited "any provision of the * * * ordinances, or [even specify] any other legal authority for that matter, upon which it based [the denial]." Cullen, 850 A.2d at 905. Although, in the course of the hearing, several council members did express concerns relative to zoning, it is not possible to deduce from the record whether or not the members of the Council constituting the majority relied upon those concerns as actual grounds to deny the petitioners'

-8-

applications.  See id. at 904-05; see also Cranston Print Works Co., 684 A.2d at 691.  What is clear, however, is the fact that the Council in 2014 was in derogation of its responsibilities for its failure to have pointed to any meaningful evidence in the record relative to health and/or safety concerns—which are, pursuant to § 5.72.020 of the Newport Ordinances, required to be the focus of such licensing decisions.[9]  And it is clear from the record that several members of that Council chose to embark on a detour into zoning concerns, which should not have been the focus of the Council's decision-making.

## IV

## Conclusion

For the reasons set forth herein, the petition for certiorari is granted, and the May 2014 decision of the Council is quashed.  The present Council is hereby directed to issue victualing licenses to the petitioners forthwith, absent any compelling evidence of significant health and/or safety issues.  The papers in this case are remanded to the Council with our decision endorsed thereon for further proceedings consistent with this opinion.

---

[9]    See footnote 2, supra.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | The Preservation Society of Newport County et al v. City Council of the City of Newport et al. |
| **Case Number** | No. 2014-191-M.P. |
| **Date Opinion Filed** | March 15, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice William P. Robinson |
| **Source of Appeal** | City Council of the City of Newport |
| **Judicial Officer From Lower Court** | N/A |
| **Attorney(s) on Appeal** | For Petitioners:<br><br>William R. Landry, Esq.<br>Matthew H. Leys, Esq.<br><br>For Respondents:<br><br>Jeremiah C. Lynch, III, Esq.<br>Lauren E. Jones, Esq.<br>Joseph J. Nicholson, Jr., Esq.<br>R. Daniel Prentiss, Esq. |