June 13, 2019

**Supreme Court**

No. 2017-202-Appeal.
(PC 15-4802)

National Education Association Rhode     :
Island et al.

        v.              :

Town of Middletown, by and through its     :
Finance Director, Lynn Dible, et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2017-202-Appeal.
(PC 15-4802)
(Dissent begins on Page 10)

National Education Association Rhode    :
Island et al.

v.              :

Town of Middletown, by and through its    :
Finance Director, Lynn Dible, et al.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on March 27, 2019, on appeal by the plaintiffs, the National Education Association Rhode Island and the Middletown Teachers' Association/NEA (collectively the union), from the entry of summary judgment in favor of the defendants, the Town of Middletown (the town), the Middletown School Committee (the school committee), and the Middletown School Department (the school department) (collectively defendants). The parties were directed to appear and show cause why this case should not be summarily decided. After reviewing the memoranda of the parties and the arguments by counsel, we are satisfied that cause has not been shown. We proceed to decide this case without further briefing and argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

## Facts and Travel

The facts and travel of this case, taken from the pleadings and memoranda of the parties, are not in dispute. In February 2015, the union and the school committee began negotiations for

a successor agreement to the collective-bargaining agreement (CBA) that was due to expire on August 31, 2015. Mediation subsequently ensued, and a tentative agreement for a six-month contract, from September 1, 2015, to February 28, 2016, was reached on August 11, 2015. The tentative agreement provided that the terms of the existing contract would remain in place for an additional six months, "unless a successor agreement is earlier agreed to by the parties *and ratified by the Middletown Council*." (Emphasis added.) The parties also agreed that the tentative agreement would "*not be binding on the parties unless and until it is ratified by the Middletown Town Council*." (Emphasis added.) On September 21, 2015, the town council declined to ratify the tentative agreement. The union filed suit.

On November 2, 2015, the union filed a complaint in Providence County Superior Court, seeking declaratory and injunctive relief. An amended complaint was subsequently filed on November 13, 2015. The genesis of this case relates to a November 2012 amendment to the Middletown Town Charter (the amendment) that provides that all collective-bargaining agreements affecting any department of town government, including the school department, "shall have no force or effect until and unless they are first ratified by a majority vote of the town council."

The union sought a declaration that, under the so-called "Michaelson Act," the 2012 amendment "does not give the Town any authority to approve or reject a six-month contract reached between the Union and the School Committee[.]"[1] The union also alleged that the rejection of the six-month agreement by the town council was arbitrary and capricious.

---

[1] The Michaelson Act, chapter 9.3 of title 28 of the General Laws, which is entitled "Certified School Teachers' Arbitration," provides that unions representing teachers are statutorily entitled to bargain collectively with school committees, which in turn are required to negotiate with the unions. *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 346 (R.I. 2008).

The union also requested a declaration that the amendment does not vest the town council with any authority, express or implied, over the contracts reached between the union and the school committee, and further that, if the amendment applied to the school committee, then "[a]ll of the obligations previously held by the School Committee must be assigned to the Town Council[,]" effectively nullifying the Michaelson Act. The union also sought a somewhat doomsday-like judicial declaration that, if "the Michaelson Act [does] not apply to either the Union or to the Town[,]" then "there are no applicable statutory dispute resolution procedures to resolve contract disputes between the Town and the Union[,]" including the prohibition against teacher strikes.

Additionally, the union sought a declaration that, when the General Assembly ratified the amendment in 2012, "the General Assembly did not expand the scope of the Town Council's authority as it relates to certified teachers as purported by the Town Council." The union also sought injunctive relief "in conjunction with the declaratory judgment."

The defendants moved for summary judgment, arguing that this Court "has twice upheld and enforced a nearly identical ratification requirement that existed as a local ordinance in the City of Providence, even without legislative ratification"; and, citing to *Providence Teachers Union v. Providence School Board*, 689 A.2d 384, 386 (R.I. 1996), and *Providence City Council v. Cianci*, 650 A.2d 499, 501 (R.I. 1994), defendants argued that "this well-settled precedent, and the clear and unambiguous language of the Town's legislatively ratified Charter," are dispositive of the issues in this case.

While defendants' motion for summary judgment was pending, the parties agreed to a new three-year CBA, effective from September 1, 2015, to August 31, 2018. On April 18, 2016, the town council voted to ratify the agreement. Thus, the issue of mootness came to the forefront

of this case. Although defendants maintained that they were entitled to summary judgment on the merits, in a supplemental memorandum in support of summary judgment, defendants also argued that the newly reached 2015-2018 three-year CBA rendered this dispute moot.

The union argued that the case was "not moot because it is capable of repetition yet evading review, which is a very well known exception to the doctrine of mootness." According to the union, the issue was important because "when the School Committee comes to the table, and when they know that what they are doing must be ratified by the Town Council, then it alters the sc[o]pe of the very negotiations[,]" because if the union knows "that ultimately we have to bring the deal back to the Town Council, it alters everything; and if we know that we don't have to, it alters everything." When asked if the requests for declaratory relief before the court pertained to the six-month CBA or the three-year CBA, the union responded that both contracts were before the court. The union argued that, although some of the declaratory relief it was seeking related only to the rejected six-month tentative agreement, "the overall legal question which is, does the School Committee have the authority to enter into its own contracts[,]" related to either a CBA "or any other contract."

After reviewing the undisputed facts of the case, the trial justice quoted *Boyer v. Bedrosian*, 57 A.3d 259 (R.I. 2012), for the proposition that a case becomes moot "if there is no continuing stake in the controversy, or if the court's judgment would fail to have any practical effect on the controversy." *Boyer*, 57 A.3d at 272. The trial justice concluded that, although at the time the amended complaint was filed the town council had rejected the six-month agreement that was reached by the parties, a new three-year CBA had been negotiated and ratified by the town council since then. Thus, he concluded that, "while a justiciable controversy existed at the time the complaint was filed, the ratification of the new [CBA] appears to have deprived the

Union of any continuing stake in this controversy." In granting summary judgment in favor of defendants, the trial justice declined to reach the merits of defendants' legal arguments.

The trial justice also rejected the narrow exception to the mootness doctrine that is available when the issue is one of extreme public importance yet is capable of evading review. The trial justice did not address whether the issues raised in the union's complaint are of extreme public importance. He concluded, however, that, while repetition of the same issue was possible, the union had not adequately demonstrated "why the issue is one that would evade review[.]" The trial justice stated that, in the event the issue arose again, the union could file another declaratory-judgment action. Accordingly, he granted defendants' motion for summary judgment, based on mootness.

The union filed a timely notice of appeal on September 2, 2016. While this appeal was pending in this Court, the parties negotiated another CBA. Significantly, there was no effort by the parties to expedite this case in this Court. At oral argument, it was disclosed that, since the entry of summary judgment in favor of defendants, the parties have entered into yet another three-year CBA, effective September 2018 through August 2021. The town council ratified the contract in the same manner as the 2015-2018 CBA.

Before this Court, the union assigns error to the decision of the trial justice declaring that this controversy is moot. The union argues that the issue before the court was not made moot because the parties entered into a new three-year CBA. The union posits that because "[n]either the Union, nor the Town, have conceded their positions on the application of the Charter provision * * * the dispute remains live." It is the union's contention that "the dispute is centered on the interpretation of an existing Charter provision." According to the union, declaratory relief "would have a practical effect on an existing controversy in that a judgment in

favor of the Union would mean that any agreements negotiated between the School Committee and the Union do not need to be ratified by the Town."

The union also argues that, even if this Court were to deem the controversy moot, "the dispute will certainly continue so long as the parties' collective bargaining relationship exists[,]" and therefore is both capable of repetition and, the union submits, of great public interest, and should be addressed under the exception to the mootness doctrine.

**Standard of Review**

This Court employs a *de novo* standard of review when confronted with a grant of summary judgment. *Sacco v. Cranston School Department*, 53 A.3d 147, 149-50 (R.I. 2012). If our view of the admissible evidence in the light most favorable to the nonmoving party reveals that there are "'no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law,' we will affirm [the summary] judgment." *Moore v. Rhode Island Board of Governors for Higher Education*, 18 A.3d 541, 544 (R.I. 2011) (brackets omitted) (quoting *Berman v. Sitrin*, 991 A.2d 1038, 1043 (R.I. 2010)). Of course, this Court reviews questions of law *de novo*. *See Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009).

**Analysis**

"The Uniform Declaratory Judgments Act (UDJA) 'vests the Superior Court with the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Key v. Brown University*, 163 A.3d 1162, 1168 (R.I. 2017) (quoting *N & M Properties, LLC v. Town of West Warwick*, 964 A.2d 1141, 1144 (R.I. 2009)). "At the outset, when confronted with a UDJA claim, the inquiry is whether the Superior Court has been presented with 'an actual case or controversy.'" *Id.* (quoting *N & M Properties, LLC*, 964 A.2d

at 1144). "Without making this determination, the Court will not have jurisdiction to entertain the claim." *Id.*

This Court generally has declined to address cases that are moot, given that "without the presence of a justiciable case or controversy, judicial power is at its weakest ebb." *Robar v. Robar*, 154 A.3d 947, 948 (R.I. 2017) (mem.) (deletions omitted) (quoting *Hallsmith-Sysco Food Services, LLC v. Marques*, 970 A.2d 1211, 1213 (R.I. 2009)). However, "a determination of mootness does not always preclude judicial review," and this Court may exercise its discretion in considering cases that are "of extreme public importance, which are capable of repetition but which evade review." *Id.* (quoting *Hallsmith-Sysco Food Services, LLC*, 970 A.2d at 1214). All three criteria must be met in order for this narrow exception to be available to the union.

"Issues of extreme public importance usually implicate important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights." *Boyer*, 57 A.3d at 281 (quoting *Campbell v. Tiverton Zoning Board*, 15 A.3d 1015, 1022 (R.I. 2011)). "A case is 'capable of repetition yet evading review'" when "there is a 'reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). This Court has cautioned "that this exception for issues of extreme public importance capable of repetition but evading review is 'a narrow exception to the mootness doctrine.'" *Id.* (quoting *Campbell*, 15 A.3d at 1022).

Article IX, § 913 of the Middletown Town Charter states, in pertinent part, that:

> "All collective bargaining agreements affecting employees of any department including but not limited to the School Department, shall have no force or effect until and unless they are first ratified by a majority vote of the town council. No such vote shall be taken until the council has had a full and complete cost impact study detailing the short-term and long-term costs of the agreement in its possession for at least seven days." Middletown Town

Charter, Art. IX, § 913 (amended Nov. 5, 2002; amended Nov. 6, 2012).

It is apparent that, since this case was filed, the parties have successfully negotiated two collective-bargaining agreements. The issue that brought the union to the Superior Court—the town council's 2015 rejection of the six-month contract extension—has not arisen again. The first agreement, which was effective until August 31, 2018, was negotiated and approved by the town council and was in place before the trial justice was called upon to consider defendants' motion for summary judgment. Therefore, we are satisfied that the trial justice did not err in granting summary judgment on the basis of mootness; there simply was no justiciable controversy before him. Our opinion is further buttressed by the fact that yet another CBA was reached by the parties and approved by the town council. We are hard-pressed to conclude that the union, having reached two successor agreements since this case was filed, has a continuing stake in the outcome of this controversy. "This Court will not review a case in which the parties no longer have an articulable stake in the outcome." *H.V. Collins Company v. Williams*, 990 A.2d 845, 848 (R.I. 2010).

Issues that are of extreme public importance fall into a select class of cases and usually implicate "important constitutional rights, * * * matters concerning a person's livelihood, or * * * citizen voting rights." *Sullivan v. Chafee*, 703 A.2d 748, 753 (R.I. 1997). Furthermore, this Court has "been loath to relax the rule insisting upon an actual, justiciable controversy in situations in which the subject matter of a case merely relates to ordinary contract disputes * * * *or to the binding effect of a collective bargaining agreement involving public school teachers*." *Id.* (emphasis added) (internal citations omitted).

The union has failed to convince us that the case at bar involves constitutional issues, a person's livelihood, or a person's right to vote. As in *Sullivan*, this case pertains to the

- 8 -

application of a municipality's charter and, as the union candidly admitted, the practical effect the amendment may have on the scope of its future contract negotiations. The union offered no argument relative to the extreme public importance of this issue.

Turning to the question of whether this case is capable of repetition yet will evade review, we note at the outset that this issue has arisen during the successful ratification of the two CBAs that were entered into by the parties. The current CBA does not expire until 2021. The union asserts that "while the dispute here arose in the context of collective bargaining[,] it has nothing to do with any provision of the CBA that has since expired or been replaced[,]" but instead "the dispute is centered on the interpretation of an existing Charter provision." According to the union, the doctrine of mootness simply does not apply when a newly negotiated "CBA does not resolve the dispute[.]" We respectfully suggest that this is not the law. The union voluntarily entered into contract negotiations and reached another CBA that was approved by the town council. The union did not request that the case be expedited before it undertook negotiations for the latest CBA that runs until 2021. This interregnum simply is not so inherently short that this case would perpetually evade review should the issue reoccur. *Cf. City of Cranston v. Rhode Island Laborers' District Council, Local 1033*, 960 A.2d 529, 536 (R.I. 2008).

Accordingly, there is no justiciable controversy before the Court. This case is presented to us in the form of a request for an advisory opinion about the scope of contract negotiations that have long since concluded. This case is moot and the plaintiffs have not met the heavy burden of demonstrating that the issues raised in their complaint are of extreme public importance and are capable of repetition yet will evade review.

**Conclusion**

For the reasons stated in this opinion, the appeal is denied, and the judgment is affirmed. The papers in this case shall be remanded to the Superior Court.


**Justice Indeglia, with whom Justice Flaherty joins, dissenting.** For the following reasons, I agree with the majority as to its conclusion that the matter before the Court is moot; however, I respectfully dissent as to the issue of whether the exception to the mootness doctrine should apply to the facts of this case.

I do recognize that "[w]e generally decline to address moot cases because without the presence of a justiciable case or controversy, judicial power is at its weakest ebb." *Robar v. Robar*, 154 A.3d 947, 948 (R.I. 2017) (mem.) (deletions omitted) (quoting *Hallsmith-Sysco Food Services, LLC v. Marques*, 970 A.2d 1211, 1213 (R.I. 2009)). However, we have also noted that "'a determination of mootness does not always preclude judicial review,' and that we exercise our discretion in considering cases that are 'of extreme public importance, which are capable of repetition but which evade review.'" *Id.* (quoting *Hallsmith-Sysco Food Services, LLC*, 970 A.2d at 1214). While I concur with the majority opinion as to the hearing justice's determination that the union's claims (regarding the town's authority to accept or reject a CBA) became moot after the parties agreed on a three-year CBA that was approved by the town, I respectfully disagree with the conclusion of the hearing justice and the majority that the mootness exception does not apply to the circumstances in this case.

"The exception has a two-pronged test." *State Department of Environmental Management v. Administrative Adjudication Division*, 60 A.3d 921, 924 (R.I. 2012) (*AAD*). To satisfy the first prong—the demonstration of "extreme public importance"—"important

constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights" are usually implicated. *Id.* (quoting *City of Cranston v. Rhode Island Laborers' District Council, Local 1033*, 960 A.2d 529, 533-34 (R.I. 2008) (*Local 1033*)). "This Court will exercise its discretion in determining if a matter raised on appeal is of such importance." *Local 1033*, 960 A.2d at 534.

The second prong of the mootness exception requires that "the petitioner must demonstrate that 'the controversy is capable of repetition and will evade review.'" *AAD*, 60 A.3d at 924 (quoting *Unistrut Corp. v. State Department of Labor and Training*, 922 A.2d 93, 99 (R.I. 2007)). "A case is capable of repetition yet evading review if there is a reasonable expectation that the complaining party or other similarly situated individuals would be subjected to the same action again." *In re Briggs*, 62 A.3d 1090, 1097 (R.I. 2013) (brackets omitted) (quoting *Boyer v. Bedrosian*, 57 A.3d 259, 281 (R.I. 2012)).

In *Preservation Society of Newport County v. City Council of City of Newport*, 155 A.3d 688 (R.I. 2017), the applicants were before this Court seeking review of the city council's decision denying two applications for licenses that would have allowed the applicants to sell pre-wrapped food, snacks, and drinks at two mansions in Newport. *Preservation Society*, 155 A.3d at 689. We held that the matter was moot because a one-year license period had long elapsed; however, we determined that the exception to the mootness rule applied. *Id.* at 692 n.7. This Court explained that there existed a "manifest public interest in the instant licensing issue" and the "case [fell] within the parameters of" the exception "for cases that are of extreme public importance and are capable of repetition yet evade judicial review." *Id.*

We similarly applied the exception in *AAD*. In that case, a fisherman sought review of a Superior Court decision that reinstated a decision by the Rhode Island Department of

Environmental Management (DEM) Division of Fish and Wildlife that found the fisherman ineligible to participate in its pilot summer fishing program because of a consent agreement that the fisherman and DEM had previously entered into as a settlement of the fisherman's alleged prior violation of the fishing regulations. *AAD*, 60 A.3d at 922. The DEM reasoned that the consent agreement constituted an administrative penalty that disqualified the fisherman from participating in the pilot program, and a Superior Court justice agreed. *Id.* at 923. Because the fishing program at issue had ended by the time the case reached this Court, the fisherman conceded that the matter was moot, but nevertheless argued that the exception for matters of "extreme public importance" should apply. *Id.* at 924. This Court concurred, holding that the exception did apply because the matter concerned the fisherman's livelihood, "as well as [those of] other fishermen who may be denied participation in similar fishing programs or may be denied fishing licenses altogether[.]" *Id.* at 925. The Court further held that the second prong of the exception applied because DEM could initiate a similar program at any time and could make similar exclusions as they did in this particular fisherman's case. *Id.* Moreover, the Court reasoned that, in light of the short duration of the pilot programs, "[i]t would be highly unlikely that an applicant could fully litigate any matter concerning such a program before it expired[.]" *Id.*

With all due respect to the majority, it is my opinion that the unique facts of this case and the nature of the parties' ongoing interactions fall squarely within the exception for cases of extreme public importance, and thus justify the exercise of this Court's discretion. *See Local 1033*, 960 A.2d at 534. As was the case with the food-service licenses at stake in *Preservation Society*, and the fisherman's livelihood in *AAD*, here the issue concerns agreements that do indeed govern the union members' livelihoods, which we have determined satisfies the

requirement of "extreme public importance." *See Preservation Society*, 155 A.3d at 692 n.7; *AAD*, 60 A.3d at 924.

Moreover, this is a matter capable of repetition yet evading review. Due to the nature of the parties' dealings, and in light of state law governing labor relations with teachers, the union and the school committee have the obligation to negotiate a new CBA at least every three years, if not more often, and, each time the parties negotiate, the town could attempt to reject the terms of a new CBA. *See* G.L. 1956 § 28-9.3-4 (setting forth the obligation of the school committee and union representative to bargain and explaining that the "obligation includes the duty to cause any agreement resulting from negotiations or bargaining to be reduced to a written contract; provided, that no contract shall exceed the term of three (3) years"). As opposed to *AAD*, where this Court theorized that DEM *may* create another program in the future that could similarly affect other fishermen (and therefore the issue of DEM's denial of applications based on prior violations was capable of evading review), here, the occurrence of the negotiations every three years, at the longest, is guaranteed. *See AAD*, 60 A.3d at 925.

The town suggests that our decision in *Local 1033* established that a three-year period is not short enough to be considered capable of evading review. After revisiting our opinion in *Local 1033*, and the decisions cited therein, I conclude that the facts of those cases are distinguishable from those in this matter, and I stress that the three-year timeframe is not the critical factor here.

In *Local 1033*, the union had filed suit against the city after the city laid off all its crossing guards, arguing that the layoffs violated the CBA. *Local 1033*, 960 A.2d at 530. An arbitrator determined that the city violated the CBA, but the Superior Court vacated that decision and determined that the no-restructuring clause in the CBA was void. *Id.* at 530, 534. On appeal,

- 13 -

we explained that "we are presented with a question concerning a long-since-expired term in the parties' collective-bargaining agreement." *Id.* at 535. Accordingly, we held that an opinion from this Court would not affect the parties "because the no-restructuring clause terminated by its own conditions" prior to this Court deciding the case. *Id.*

Similarly, in *Sullivan v. Chafee*, 703 A.2d 748 (R.I. 1997), members of the city council sought a declaratory judgment to determine the operative municipal budget and tax rate for the 1997 fiscal year. *Sullivan*, 703 A.2d at 749. But, by the time the matter reached this Court, we held that "the issue of which budget and which tax rate should be deemed operative for the 1997 fiscal year is now a moot question because the 1997 fiscal year has concluded and plaintiffs are no longer seeking a ruling that would invalidate that particular budget and tax rate." *Id.* at 753.

Finally, in *Town of Scituate v. Scituate Teachers' Association*, 110 R.I. 679, 296 A.2d 466 (1972), the town sought a declaratory judgment as to whether it was bound to a CBA between the teachers' association and the school committee and was thereby required to pay the teachers a salary that had been negotiated. *Town of Scituate*, 110 R.I. at 680, 296 A.2d at 467. After the trial justice heard the case, but before the matter reached this Court, the CBA expired, and the town had appropriated the necessary funds to pay the teachers the agreed-upon salary. *Id.* at 683, 296 A.2d at 468-69. We held that the matter was moot because the CBA had long since expired by the time this Court heard the case in which the school committee sought a judicial declaration regarding whether a term in the CBA was binding despite town budget constraints. *Id.* at 684, 296 A.2d at 469.

Contrary to those cases, here, the union did not file for a declaratory judgment seeking a determination regarding a specific term of a CBA or regarding a charter provision applicable only to a discrete CBA. Instead, the union seeks a judicial declaration concerning the effect of

- 14 -

the charter provision—a question that will affect all future CBAs that the union and the school committee negotiate. Again, the three-year timeframe is not the determinative factor here. While we did state in *Local 1033* that "[t]he three-year term of a collective-bargaining agreement, however, is not of such an 'inherently brief duration' that it would 'almost invariably be too short to enable full litigation on the merits[,]'" I emphasize that my conclusion here does not rely on the time period of the parties' CBAs. *See Local 1033*, 960 A.2d at 536 (quoting *Driver v. Town of Richmond ex rel. Krugman*, 570 F. Supp. 2d 269, 274 (D.R.I. 2008)). Instead, I believe that the crux of the matter is the fact that the parties will constantly renegotiate successor CBAs, and the fact that the town could assert a veto authority pursuant to the charter in each instance.

In reaching this conclusion, I considered several scenarios to determine if this issue is capable of evading review. In the first scenario, I imagined that the union could file for declaratory judgment at the start of the next negotiation, to obtain resolution of the question of the town's authority under the charter. However, that scenario would require that the union wait for the judicial process to interpret the town's authority; and, in the meantime, the union would be forced to halt all negotiations and refuse any further offers or attempts to reach an agreement. As discussed above, such an approach would collide with the union's duty to negotiate on behalf of its members; this scenario would thwart that duty. Moreover, as the facts of this case exhibit, when the parties cannot initially reach an agreement, they typically pursue mediation and continue negotiating until an agreement is reached. Thus, to suggest that the union refile a claim for declaratory judgment the next time the parties return to negotiate would equate to this Court forcing the union to decide between *either* obtaining an answer as to the town's authority under the charter *or* fulfilling its mandated duty to negotiate.

- 15 -

Similarly, to suggest that the union should seek declaratory judgment if and when the town rejects a proposed CBA in the future would also effectively force the union to forgo its duty to negotiate on behalf of its members. While I acknowledge that it very well could be the case that the town continues to approve CBAs negotiated and ratified by the union and the school committee, the question of the town's authority has a continuing effect on the negotiations because the town's interest as a nonpresent third party with veto power will inevitably be a consideration in the negotiation process between the union and the school committee.

In either scenario, the union would be required to wait a length of time that could amount to years for a case to be litigated to its completion in order to preserve its declaratory-judgment claim. The union, in the meantime, would be forced to decline to further negotiate. Thus, without forcing the union to decide between seeking a judicial declaration as to the town's authority under the charter and fulfilling its duty to negotiate on behalf of its members, I cannot fathom a situation in which the union could obtain declaratory judgment to resolve the question of whether the town has the authority to accept or reject a CBA negotiated by the union and the school committee. This Court's determination that the union's claim is moot and that the exception does not apply creates a "catch-22" scenario for the union and will, as a matter of practicality, deprive the union of its ability to seek a declaratory judgment.[1]

Therefore, because the charter is effective indefinitely and will come into play each and every time the parties return to the negotiating table, and because the union could receive an answer only in the event it neglects its obligation to negotiate with the school committee in the future, thus affecting the livelihood of the union members, the controversy is capable of

---

[1] "The term 'catch-22' derives from a Joseph Heller novel by the same name. Although somewhat difficult to define precisely, it generally refers to a paradoxical rule which creates an illogical or senseless situation in which one is faced with two equally undesirable alternatives." *City of Pawtucket v. Pimental*, 960 A.2d 981, 988 n.6 (R.I. 2008).

repetition yet evading review, and the mootness exception should apply.  For these reasons, I respectfully dissent.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | National Education Association Rhode Island et al. v. Town of Middletown, by and through its Finance Director, Lynn Dible, et al. |
| **Case Number** | No. 2017-202-Appeal. (PC 15-4802) |
| **Date Opinion Filed** | June 13, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Carly Beauvais Iafrate, Esq. |
| | For Defendants: <br><br> Timothy C. Cavazza, Esq. <br> Ronald F. Cascione, Esq. <br> Benjamin M. Scungio, Esq. <br> Timothy K. Baldwin, Esq. |